No. 95-099

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

INSURED TITLES, INC.,
now doing business as TRW,

      Plaintiff and Respondent,

  v.

LEE McDONALD,

      Defendant and Appellant.

**FILED**

JAN 30 1996

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable John S. Henson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Nancy K. Moe; Ellingson & Moe, Missoula, Montana

        Harold V. Dye; Dye Law Office, Missoula, Montana

    For Respondent:

        Gregory W. Duncan; Harrison, Loendorf & Poston,
Helena, Montana

Submitted on Briefs:  January 4, 1996

Decided:  January 30, 1996

Filed:

_____
Clerk

Justice W. William Leaphart delivered the opinion of the Court.

Lee McDonald appeals from the Opinion and Order of the Montana Fourth Judicial District Court, Missoula County, granting TRW's motion for summary judgment determining that the exclusions to the title insurance policy applied. We affirm.

We consider the following issues on appeal:

1. Did the District Court err in granting TRW's motion for summary judgment?

2. Did the District Court err in determining that Exclusion No. 1 eliminated coverage in light of this Court's holding in McDonald v. Jones?

This is McDonald's second appeal arising out of his interest in certain real property located in the Seeley Swan Valley. McDonald v. Jones (1993), 258 Mont. 211, 852 P.2d 588. Irene H. Jones owned 12.63 acres of land in the Seeley Swan Valley. In 1981, Jones conveyed two acres of her land to Ownership of America (Ownership). However, there was no agreement as to which two acres of the 12.63 acre tract were to be conveyed. On April 13, 1981, Jones executed a warranty deed conveying two acres to Ownership. The deed contained the following land description:

> That portion of Lot numbered Seven (7) of Section Six (6) in Township Twenty (20) North of Range Sixteen (16) West of Montana Principal Meridian, Montana, lying West of Federal Aid Secondary 209 right-of-way and containing two acres more or less and further accurately described by plat on file with the party of the first part and party of the second part. Party of the first part herein reserves all minerals under the above description.

No plat was ever filed with the Missoula County Clerk and Recorder, and the Clerk's office erroneously treated the conveyance as a transfer of the entire 12.63 acre tract. The Missoula County

2

Treasurer changed the tax records upon recordation of the deed and sent all further tax notices for the entire 12.63 acre tract to Ownership. Ownership failed to pay any of the real property taxes. Consequently, on July 20, 1983, Missoula County took a tax sale certificate on the entire tract due to nonpayment of taxes. Jones received no notice of the pending tax sale. On August 13, 1985, prior to taking a tax deed to the entire tract, Missoula County assigned its interest in the tax certificate to McDonald for $738.92, which represented the unpaid taxes, interest and penalties. On April 28, 1986 and on May 5, 1986, McDonald published a notice for application for tax deed in the local newspaper. The notice contained the following legal description "[a]ll of Gov't Lot 7 lying West of Federal Aid Secondary #209 R/W in SW4 (Plat E) of 6-20N-16W, M.P.M." On August 27, 1986, the Missoula County Treasurer executed a tax deed to McDonald as grantee which contained the following legal description:

> Book 163 page 228 SUID #1078409
> Pt of Lot T W of R/W in SW 1/4 Plat E Section 6 Township 20 Range 16 12.63 Acres
> That portion of Lot numbered Seven (7) of Section Six (6) in Township Twenty (20) North of Range Sixteen (16) West of Montana Principal Meridian, Montana, lying West of Federal Aid Secondary 209 Right-of-Way and containing two acres more or less and further accurately described by Plat on file with the party of the first part and party of the second part. Party of the first part herein reserves all minerals under the above description.

McDonald filed a Notice of Claim of Tax Title in the Missoula newspaper on August 25, 1986 and September 1, 1986. The legal description in this notice was the same as in the application for tax deed.

Ownership contacted McDonald and agreed to give him a quit claim deed to the property. McDonald prepared the quit claim deed and it contained a different legal description than that used in the warranty deed from Jones to Ownership. The deed McDonald prepared deleted all reference to the two acre limitation contained in the Jones to Ownership warranty deed and the word "all" was inserted at the beginning of the legal description. McDonald had actual notice of the two acre limitation contained in the Jones to Ownership deed but chose to ignore the limitation. McDonald obtained a policy of title insurance from Insured Titles (now TRW). Although TRW's "chain of title sheet" references the Jones to Ownership two acre sale, the policy purported to cover the entire 12.63 acre tract. McDonald asserted that under the policy TRW was required to defend the entire 12.63 acre tract. In 1990, TRW filed a complaint against McDonald for declaratory judgment seeking to determine its duties under the title insurance policy. Motions for summary judgment were submitted by both McDonald and TRW. McDonald asserted that TRW had breached its title insurance policy and had acted in bad faith. TRW contended that it had satisfied its duties of defense and indemnity in negotiating a settlement in which it agreed to secure a two acre parcel for McDonald. At that time, however, the District Court did not rule on the motions due to the pending appeal to this Court in the underlying case of <u>McDonald v. Jones</u>. In <u>McDonald v. Jones</u>, McDonald was attempting to quiet title in the entire 12.63 acre parcel. The district court granted summary judgment in favor of Jones finding that the Jones to

4

Ownership deed was void. McDonald was unsuccessful in his bid to quiet title in the 12.63 acre tract. We affirmed the district court's determination that the Jones to Ownership deed was void and that McDonald was entitled to none of the property.

Following our opinion in McDonald, the District Court determined that the summary judgment motions were properly before the court and that judicial notice could be taken of the underlying case. The District Court determined that the exclusions of the title insurance policy applied and, further, that McDonald knowingly altered the legal description of the property thus defeating coverage under the policy. Pursuant to Rule 59, M.R.Civ.P., McDonald filed a motion to amend this ruling. Although the District Court ruled that the motion was time barred, the District Court addressed the merits of his argument. McDonald appeals from this determination. In his motion, McDonald asserted that the issue of whether TRW breached its duty to defend was not addressed in the District Court's order. McDonald argued that TRW's voluntary filing of a quiet title action against Jones acted as a judicial admission regarding TRW's duty to defend. TRW countered that it undertook the quiet title action under a reservation of rights and, upon later investigation, determined that the policy exclusions had been triggered and, therefore, that TRW was justified in withdrawing from the quiet title action.

1. Did the District Court err in granting TRW's motion for summary judgment?

In reviewing a district court's grant of summary judgment we use the same criteria as that used by the district court; we are

5

guided by Rule 56, M.R.Civ.P. Chilberg v. Rose (Mont. 1995), 903 P.2d 1377, 1378-79, 52 St.Rep. 1038, 1039 (citing Minnie v. City of Roundup (1993), 257 Mont. 429, 431, 849 P.2d 212, 214). Thus, we determine whether a genuine issue of material fact exists and whether the moving party is entitled to judgment as matter of law. Chilberg, 903 P.2d at 1378-79. In the instant case, the facts of this dispute regarding the transactions and the chain of title were fully resolved in the underlying case of McDonald v. Jones.

McDonald asserts that even assuming the District Court were correct in its determination regarding Exclusion No. 1 of the title insurance policy, which would exclude coverage because of the violation of the subdivision and platting act, genuine issues of material fact regarding TRW's alleged breach of its independent duty to defend title should have precluded the grant of summary judgment. We note that if the asserted claim is not covered by the policy, then the insurer has no duty to defend the insured. City of Bozeman v. AIU Ins. Co. (1993), 262 Mont. 370, 376, 865 P.2d 268, 272-73; New Hampshire Ins. Group v. Strecker (1990), 244 Mont. 478, 480, 798 P.2d 130, 132. As McDonald himself points out, an insurer may step out of a suit once it clearly and unequivocally demonstrates that the plaintiff's claim against the insured no longer falls within the policy's coverage. Burns v. Underwriters Adjusting Co. (1988), 234 Mont. 508, 510, 765 P.2d 712, 713; Babcock & Wilcox Co. v. Parsons Corp. (8th Cir. 1970), 430 F.2d 531, 538. Further, TRW argues that the case does not involve a duty to defend, rather, it involves TRW's prosecution of a quiet

6

title action on McDonald's behalf. We conclude that the District Court did not err in determining that by negotiating the two acre settlement with Jones, TRW had satisfied its obligations under the policy and that it did not breach its duties. McDonald himself altered the legal description of the property and that alteration was at the heart of this dispute. No material issues of fact existed, and the District Court was correct in concluding that TRW had satisfied its obligations under the policy.

2. Did the District Court err in determining that Exclusion No. 1 eliminated coverage in light of this Court's holding in McDonald v. Jones?

In the underlying case of McDonald v. Jones, TRW provided counsel under a reservation of rights. Condition and stipulation 3(c) of the title insurance policy provided that TRW had the option to pay or otherwise settle any claim asserted against an insured. Based on its investigation, TRW concluded that, at most, McDonald was entitled to two acres. TRW presented McDonald with the offer of two acres, or the fair market value of the two acres. However, McDonald refused TRW's offer. Once TRW tendered this offer and McDonald refused, TRW determined that it had satisfied its obligations under the policy.

After TRW determined that it had satisfied its obligations under the title insurance policy, TRW filed its declaratory judgment action seeking a determination that the exclusions to the policy had been triggered by McDonald's conduct. McDonald asserts that Exclusion No. 1 was improperly invoked. Exclusion No. 1 of the policy excepted coverage for:

7

> Any law, ordinance or governmental regulation (including but not limited to building and zoning ordinances) restricting or regulating or prohibiting the occupancy, use or enjoyment of the land, or regulating the character, dimensions or location of any improvement now or hereafter erected on the land, or prohibiting a separation in ownership or a reduction in the dimensions or area of the land, or the effect of any violation of any such law, ordinance or governmental regulation.

As this Court noted in McDonald, in the Jones to Ownership conveyance a separation in ownership or a reduction in the dimensions or area of the land had occurred in violation of the Montana Subdivision and Platting Act. Thus, under Exclusion No. 1, a violation of the Montana Subdivision and Platting Act would be sufficient to defeat coverage under the policy.

Additionally, in its Opinion and Order the District Court stated that "all of these [exclusions and conditions], singularly or taken as a whole, are sufficient to invoke the exclusions to coverage under the policy." Exclusion No. 3 of the policy excepted coverage for:

> Defects, liens, encumbrances, adverse claims, or other matters (a) created, suffered, assumed or agreed to by the insured claimant; (b) not known to the company and not shown by the public records but known to the insured claimant either at date of policy or at the date such claimant acquired an estate or interest insured by this policy and not disclosed in writing by the insured claimant to the company prior to the date such insured claimant became an insured hereunder; (c) resulting in no loss or damage to the insured claimant; (d) attaching or created subsequent to date of policy; or (e) resulting in loss or damage which would not have been sustained if the insured claimant had paid value for the estate or interest insured by this policy.

The District Court concluded that "McDonald is not a bona fide purchaser for value. McDonald admits to having actual notice of the two acre limitation . . . . Furthermore, McDonald paid no

8

consideration to Ownership of America in exchange for the quit claim deed." Thus, as the District Court determined, even if Exclusion No. 1, which would exclude coverage because of the violation of the subdivision and platting act, were improperly invoked against McDonald, exclusion 3(b) applied because although the warranty deed was deficient in designating which two acres of the parcel were to be severed, the deed clearly put McDonald on notice of the two acre limitation. Further, the court noted that exclusion 3(a) applied because McDonald's alteration of the legal description illustrated his knowledge of the discrepancy regarding the size of the parcel and demonstrated that the defect in the description was one "created, . . . or agreed to by the insured claimant."

Next, McDonald argues that the "independent concurrent cause" doctrine provides for coverage because this Court "invalidat[ed] the Jones-Ownership of America warranty deed on two independent grounds: uncertainty and violation of the Montana Subdivision and Platting Act." McDonald asserts that where there are multiple possible grounds for coverage for a single happening, then coverage exists if any of the grounds are valid. However, the uncertainty that originated this dispute resulted from the failure to comply with the Montana Subdivision and Platting Act. Thus, the two causes are not independent causes, rather, they are interdependent causes. As the District Court noted, "the deeds were void due to operation of law, stemming from the initial failure to comply with the Montana Subdivision and Platting Act."

9

Finally, McDonald asserts that Exclusion No. 1 conflicts with § 33-25-214, MCA, and that the "efficient proximate cause doctrine" provides for coverage. However, McDonald failed to properly raise these issues at the District Court. Issues not properly raised at the District Court will not be considered on appeal. Accordingly, we decline to address these issues for the first time on appeal. Marsh v. Overland (Mont. 1995), 905 P.2d 1088, 1093, 52 St.Rep. 1099, 1102 (citing Lane v. Smith (1992), 255 Mont. 218, 221, 841 P.2d 1143, 1145).

We hold that the District Court properly determined that there were no genuine issues of material fact and that TRW was entitled to judgment as a matter of law.

Affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices

10