No. 03-481

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 108

FARMERS UNION MUTUAL INSURANCE COMPANY,

Plaintiff, Respondent and Cross-Appellant,

v.

RAYMOND STAPLES, KENNETH J. HUNTSINGER,
ARLENE L. HUNTSINGER, and KENNETH J.
HUNTSINGER, as Natural Parent and Guardian
of KAITLYN MARIE HUNTSINGER,

Defendants and Appellants.

APPEAL FROM:     District Court of the Twelfth Judicial District,
                 In and For the County of Hill, Cause No. DV 2002-058,
                 Honorable Wm. Nels Swandal, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

                   James Hunt and James Molloy, Hunt & Molloy Law Firm,
                   Helena, Montana

                   Robert C. Melcher, Attorney at Law, Billings, Montana

        For Respondent:

                   Joseph M. Sullivan, Deschenes & Sullivan, Great Falls, Montana

                                   Submitted on Briefs:  January 21, 2004

                                             Decided:  April 27, 2004

Filed:

        _____
                            Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1     Raymond Staples (Staples), Kenneth J. Huntsinger, Arlene L. Huntsinger, and Kenneth J. Huntsinger, as Natural Parent and Guardian of Kaitlyn Marie Huntsinger (collectively the Huntsingers) appeal the District Court's ruling. Farmers Union Mutual Insurance Company (FUMIC) cross-appeals. We reverse in part, affirm in part, and remand.

¶2     The issues on appeal are as follows:

¶3     1. Whether the District Court correctly determined that FUMIC had a duty to defend Staples?

¶4     2. Whether the District Court erred in holding that as a matter of law Staples was not an additional insured under Matt Corcoran's (Corcoran) insurance policy?

¶5     3. Whether the District Court erred in failing to conclude that the judgment in the underlying action was invalid under the principle of judicial estoppel?

## Factual and Procedural Background

¶6     On August 9, 1998, Kenneth J. Huntsinger (Kenneth) was driving a vehicle on a road near Havre and struck a horse named Frenchy. It appeared that Frenchy may have come from Staples' property just prior to the accident, although testimony regarding the precise location of Frenchy just before the accident is conflicting. Resolution of the issues in this case hinges upon a determination as to whether an insurer, in deciding to tender or reject a defense, should purport to resolve disputed issues of fact.

¶7     The record indicates that Corcoran and Don Christopherson (Christopherson) purchased Frenchy from Tom Leonard in 1993, as half-owners. Corcoran claims that in

2

1995 or 1996 he sold his half-interest in Frenchy to Christopherson. Staples, Corcoran, and Christopherson were all friends. Frenchy was pastured at both Corcoran's ranch and Staples' ranch at varying times prior to the accident. Frenchy bore Corcoran's brand before and at the time of the accident. Members of the surrounding community believed Corcoran owned Frenchy.

¶8     Corcoran had a ranch liability policy in place at the time of the accident with FUMIC. In addition to providing coverage for Corcoran (the named insured), the insurance policy provided that any person would be an additional insured if the person was: "(1) legally responsible for animals . . . owned by [the named] Insured . . . but insofar as: (a) The insurance under this policy applies to Occurrences involving animals . . . (b) The person's or organization's custody or use of the animals . . . does not involve Business; (c) That person or organization has the custody or use of the animals . . . with the owner's permission." An Occurrence was defined as including an accident which was neither expected or intended from the standpoint of the Insured (Corcoran).

¶9     Kenneth, Kenneth's mother Arlene L. Huntsinger (Arlene), and Kenneth's daughter Kaitlyn Marie Huntsinger (Kaitlyn) instituted a claim against Staples. Kenneth suffered injuries including mental and physical pain and suffering, complete physical disability, economic loss, disruption of his normal life, lost wages, medical and other expenses, loss of consortium, and other general and special damages. Arlene's claims were derivative claims for loss of consortium, lost earnings, expenses, and emotional distress. Kaitlyn's claims

3

were also derivative claims for economic loss, emotional distress, and loss of consortium.

¶10     After approximately one year of pre-trial litigation (and approximately one month after the Huntsingers filed their claim against Staples), Staples filed a third-party complaint against Corcoran and Christopherson. Staples alleged that Corcoran and Christopherson together owned Frenchy. This would mean that Staples, serving as Frenchy's custodian, was an additional insured under Corcoran's policy. As such, he demanded a defense because, based on the terms of Corcoran's policy, FUMIC would owe a third party with permissive custody of the insured's horse all the duties owed to the insured. The Huntsingers subsequently filed an Amended Complaint which named Christopherson and Corcoran as defendants. The Amended Complaint alleged that Frenchy was owned individually or jointly by Corcoran and Christopherson. The complaint stated Frenchy was on either Staples' or Corcoran's land, under the control of Staples, Corcoran, or Christopherson when he left the pasture (of either Staples or Corcoran), and eventually was situated on the highway where Kenneth's vehicle collided with him.

¶11     FUMIC admitted that Corcoran's policy would cover the accident with the Huntsingers if Corcoran owned Frenchy at the time of the accident and Frenchy was being pastured at Staples' ranch. However, FUMIC refused to defend Staples in the underlying action because it determined that Corcoran did not own Frenchy at the time of the accident and thus Staples was not an additional insured under Corcoran's policy.

4

¶12  In December of 2001, Staples confessed judgments in favor of the Huntsingers, acknowledging that evidence existed from which a jury could find that he was liable for their damages.  Staples assigned his rights under the FUMIC policy to the Huntsingers in exchange for covenants not to execute.  After Staples confessed judgments, FUMIC filed a declaratory judgment action against Staples and the Huntsingers.  FUMIC sought a declaration that it had no duty to defend or indemnify Staples, that the Huntsingers' judgments against Staples were not valid, and that FUMIC was justified in denying coverage to Staples.

¶13  The parties filed cross-motions for summary judgment.  Staples and the Huntsingers asked the court to rule that FUMIC had a duty to defend Staples in the underlying action. FUMIC sought a ruling that it had no duty to defend Staples and that the judgments against Staples were not valid and enforceable. The court concluded that, based on the allegations in the amended complaint,  FUMIC had a duty to defend Staples. The court then proceeded to go beyond the allegations in the amended complaint and analyze the facts developed during the course of the ensuing litigation. The court noted that both Corcoran and Christopherson swore under oath that although Frenchy had, at one time, been partly owned by Corcoran, Corcoran had sold his interest in Frenchy to Christopherson some months prior to the accident. Accordingly, the court concluded:

> While FUMIC, from the face of the complaint and amended complaint, clearly had a duty to defend when it appeared that Staples might be an insured under Corcoran's policy, the facts, as they have developed, clearly show that Corcoran did not own the horse, that because Corcoran did not own the horse he could not have given permission for the horse to be on Staples' property and, therefore, Staples was not a third-party insured of Corcoran.

5

¶14    The Huntsingers appeal from this determination.

Discussion

¶15 We combine our discussion of Issues 1 and 2 as follows:

¶16 Issue 1: Whether the District Court correctly determined that FUMIC had a duty to defend Staples but then concluded that Staples was not a third-party insured?

¶17 Issue 2: Whether the District Court erred in holding that as a matter of law Staples was not an additional insured under Corcoran's insurance policy?

¶18 A district court's decision to grant summary judgment is reviewed by this Court de novo. *Farmers Union Mutual Ins. Co. v. Horton*, 2003 MT 79, ¶ 10, 315 Mont. 43, ¶ 10, 67 P.3d 285, ¶ 10. Our evaluation is the same as that of the trial court. We apply the criteria contained in Rule 56, M.R.Civ.P. According to this rule, "[t]he moving party must establish both the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Farmers Union Mutual Ins. Co.*, ¶ 10. If this is accomplished, "the burden then shifts to the non-moving party to prove, by more than mere denial and speculation, that a genuine issue does exist." *Old Elk v. Healthy Mothers, Healthy Babies,* 2003 MT 167, ¶ 11, 316 Mont. 320, ¶ 11, 73 P.3d 795, ¶ 11 (citation omitted). If the court determines that no genuine issues of fact exist, "the court must then determine whether the moving party is entitled to judgment as a matter of law." *Old Elk*, ¶ 11 (citation omitted). We review legal determinations made by a district court to determine whether the conclusions are correct. *Farmers Union Mutual Ins. Co.*, ¶ 10.

¶19 This case presents an issue as to whether an insurer, in determining whether it has a duty to defend an insured, most look only to the provisions of the insurance policy and the

allegations in the complaint or whether it may also look at facts developed outside the pleadings and the policy.

¶20    Montana law is well-settled that an insurer's duty to defend its insured arises when an insured sets forth facts which represent a risk covered by the terms of an insurance policy. *Lindsay Drill. & Cont. v. U.S. Fid. & Guar. Co.* (1984), 208 Mont. 91, 94, 676 P.2d 203, 205; *Graber v. State Farm* (1990), 244 Mont. 265, 270, 797 P.2d 214, 217 ("[t]he general rule is that the insurer has a duty to defend when a complaint filed against its insured sets forth facts which bring the event within the policy provisions"); *Grindheim v. Safeco Ins. Co.* (D. Mont. 1995), 908 F.Supp. 794, 798 ("an insurer's duty to defend its insured arises when the insurer, through reference to pleadings, discovery, or final issues declared ready for trial, has received notice of facts representing a risk covered by the terms of the policy"). The insurance company must look to the allegations of a complaint to determine if coverage exists under an insurance policy, thus giving rise to the insurer's duty to defend. *Graber*, 244 Mont. at 270, 797 P.2d at 217. Montana "case law clearly provides that where the insurer refuses to defend a claim and does so unjustifiably, that insurer becomes liable for defense costs and judgments." *Lee v. USAA Cas. Ins. Co.*, 2004 MT 54, ¶ 19, 320 Mont. 174, ¶ 19, 86 P.3d 562, ¶ 19; *Independent Milk & Cream Co. v. Aetna Life Ins. Co.* (1923), 68 Mont. 152, 158-59, 216 P. 1109, 1111 (in interpreting agreements of indemnity, the court relied on § 8169, RCM (1921) which is now codified in § 28-11-316, MCA); *Grindheim,* 908 F.Supp at 798.

8

¶21    The duty to defend is independent from and broader than the duty to indemnify created by the same insurance contract. *St. Paul Fire & Marine Ins. Co. v. Thompson* (1967), 150 Mont. 182, 188, 433 P.2d 795, 799; *Grindheim*, 908 F.Supp. at 800. The duty to defend arises when a complaint against an insured alleges facts, which if proven, would result in coverage. *St. Paul Fire & Marine Ins. Co.*, 150 Mont. at 188, 433 P.2d at 799; *Grindheim*, 908 F.Supp. at 800. "Where a complaint alleges facts which represent a risk outside the coverage of the policy but also avers facts which, if proved, represent a risk covered, the insurer is under a duty to defend." *Atcheson v. Safeco Insurance Co.* (1974), 165 Mont. 239, 245-46, 527 P.2d 549, 552 (citations omitted).

¶22    The fundamental protective purpose of an insurance policy and the obligation of the insurer to provide a defense require that coverage exclusions be narrowly construed. *Farmers Union Mut. Ins. Co. v. Oakland* (1992), 251 Mont. 352, 356, 825 P.2d 554, 556; *Grindheim*, 908 F.Supp. at 801. The insurer is under a duty to construe the factual assertions from the perspective of the insured rather than solely from the insurer's own perspective. *Portal Pipe v. Stonewall* (1993), 256 Mont. 211, 216, 845 P.2d 746, 749; *Grindheim*, 908 F.Supp. at 801. When a court compares allegations of liability advanced in a complaint with policy language to determine whether the insurer's obligation to defend was "triggered," a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated. *See Portal Pipe,* 256 Mont. at 216, 845 P.2d at 749; *Grindheim*, 908 F.Supp. at 805. Unless there exists an unequivocal demonstration that the claim against an insured does not fall

9

within the insurance policy's coverage, an insurer has a duty to defend. *Insured Titles, Inc. v. McDonald* (1996), 275 Mont. 111, 116, 911 P.2d 209, 212.

¶23    In the present case, FUMIC's vice president of claims, Gary Bickler, conceded that Corcoran's policy would cover the accident if Corcoran owned Frenchy at the time of the accident and if Frenchy came from Staples' ranch. However, rather than accepting the allegation in the amended complaint that Corcoran owned the horse as true, Bickler looked at evidence outside the amended complaint and, although he conceded the evidence was conflicting, he made a unilateral determination that Corcoran did not own Frenchy at the time of the accident. He thus concluded that FUMIC did not owe Staples a duty to defend. The District Court concluded:

> It is possible, upon a review of the evidence presented, that the insurer could show that Frenchy did not belong to it's [sic] insured and that they, indeed had no duty to Staples or the plaintiffs in the underlying action, but that is not a question for the insurer to answer unilaterally upon receipt of only the complaint and/or answer. That question is reserved for the Court or the jury. At the time FUMIC received the complaint and answer, FUMIC had a duty to defend.

¶24    We agree with the District Court's analysis on this point. Although the insurer is free to look at facts beyond the allegations in the complaint, it does so at its own risk. *See Lee*, ¶¶ 19-22; *Independent Milk & Cream Co.*, 68 Mont. at 158-59, 216 P. at 1111; *Grindheim*, 908 F.Supp at 800. Unless there exists an unequivocal demonstration that the claim against the insured does not fall within the policy coverage, the insurer has a duty to defend. *Insured Titles, Inc.*, 275 Mont. at 116, 911 P.2d at 212. In other words, if there is any dispute as to the facts relevant to coverage, those factual disputes must be resolved in favor of coverage.

¶25 Here, the issue of ownership was heavily disputed. Although Corcoran testified that both he and Christopherson had initially purchased Frenchy, the bill of sale only named Corcoran as a purchaser. Although Corcoran testified that he had sold the horse, he continued to pasture and water the horse for no compensation. Frenchy had Corcoran's brand at the time of the accident and there was no evidence of a bill of sale from Corcoran to Christopherson. Clearly there were genuine disputes as to material facts.

¶26 Given the allegations in the complaint and the dispute as to ownership of Frenchy, FUMIC had a duty to defend Staples. If FUMIC believed that there was a legitimate basis for contesting coverage, it could have tendered the defense under a reservation of rights and filed a declaratory judgment action. However, despite conflicting testimony, FUMIC unilaterally decided the issue of ownership against Staples and refused to defend him. In taking this course of action, the insurer proceeds at its own risk. Here, there were clearly genuine disputes as to facts material to the issue of Frenchy's ownership. It cannot be said that there was an unequivocal demonstration that the claim was not within the FUMIC policy's coverage. *Insured Titles, Inc.*, 275 Mont. at 116, 911 P.2d at 212.

¶27 The District Court correctly concluded that at the time FUMIC received the amended complaint and answer, it had a duty to defend; that Bickler erred in purporting to unilaterally decide the disputed issue of ownership, which was properly a jury question. The District Court, however, then proceeded to fall into the same trap when, upon motions for summary judgment, it resolved the clearly disputed question of Frenchy's ownership. The law in Montana "clearly provides that where the insurer refuses to defend a claim and does so

11

unjustifiably, that insurer becomes liable for defense costs and judgments." *Lee*, ¶ 19;

*Independent Milk & Cream Co.*, 68 Mont. at 158, 216 P. at 1111. Section 28-11-316, MCA,

codifies the principle that

> [t]he person indemnifying is bound, on request of the person indemnified, to defend actions or proceedings brought against the latter in respect to the matters embraced by the indemnity, but the person indemnified has the right to conduct such defenses if he chooses to do so. If after request the person indemnifying neglects to defend the person indemnified, a recovery against the latter suffered by him in good faith is conclusive in his favor against the former.

¶28　If FUMIC wished to dispute coverage, it could have defended Staples under a

reservation of rights and later sought judicial determination through a declaratory judgment

action to determine whether coverage existed. *See e.g. Montana West Farm Bureau v.*

*Brewer*, 2003 MT 98, ¶ 30, 315 Mont. 231, ¶ 30, 69 P.3d 652, ¶ 30. However, because

FUMIC unjustifiably refused to defend, it is estopped from denying coverage. *Independent*

*Milk & Cream* Co., 68 Mont. at 158, 216 P. at 1111; *Lee*, ¶ 19.

¶29　Having correctly determined that FUMIC had a duty to defend, the court should have

ended the analysis and concluded that since FUMIC breached that duty, it was estopped from

denying coverage and Staples was entitled to summary judgment. The court erred when it

proceeded to resolve disputed issues of fact in ruling on a motion for summary judgment in

favor of FUMIC.

¶30　Issue 3: Whether the District Court erred in failing to conclude that the judgment in

the underlying action was invalid under the principle of judicial estoppel?

¶31    On cross-appeal, FUMIC contends that the Huntsingers' judgment against Staples was obtained through fraud in that Staples was offered money in the form of payment of his attorney fees and was relieved from liability in exchange for changing his testimony.  In his original answer to the complaint, Staples took the position that Frenchy was not on his property, that the horse was not in his possession, and that he refused to care for the horse. FUMIC contends that in confessing judgment, Staples contradicted his previous position by admitting the allegations of the amended complaint–i.e., that the horse was on his property and that he was taking care of Frenchy for Corcoran.  FUMIC contends that Staples should be judicially estopped from entering into a confession of judgment based upon this change in position.

¶32    The Huntsingers and Staples counter that it is not fraudulent for a defendant to agree to a  judgment in order to avoid the risks and expenses of proceeding to trial.  They point out that Staples merely acknowledged in writing that there was evidence upon which a jury could find facts contrary to his positions and testimony.  The exact language in the confessions of judgment was that "[i]n light of the severe injuries sustained and in recognition of the substantial risk that a jury would determine that [the Huntsingers are] entitled to recover damages in this matter against Raymond Staples, Raymond Staples consents to entry of judgment as above-stated in this matter."  The covenants not to execute and assignment of claims contain similar language that the parties entered into these agreements "because of the substantial risk of a large judgment being entered in favor of plaintiff Kenneth J. Huntsinger and against Raymond Staples, which would be financially ruinous to Raymond

13

Staples and likely result in bankruptcy." We conclude that Staples did not perpetrate a fraud upon the court. He did nothing more than concede that, given the disputed facts, there was a risk that a jury could find him at fault, even if he continued to deny liability.

¶33 Finally, FUMIC contends that the confessions of judgment do not conform with § 27-9-102(3), MCA, which requires that "[a] statement in writing must be made, signed by the defendant, and verified by his oath to the following effect: . . . (3) If it be for the purpose of securing the plaintiff against contingent liability, it must state concisely the fact constituting the liability and show that the sum confessed therefor does not exceed the same." The Huntsingers and Staples respond that: (1) § 27-9-102(3), MCA, does not apply to the judgments in question, (2) since FUMIC was not a party to the underlying lawsuit, it lacks standing to attack the judgments, and (3) there is no basis for a collateral attack since the judgments are not void on their face and the court did not lack jurisdiction. *See Glickman v. Whitefish Credit Union Assoc.*, 1998 MT 8, ¶ 13, 287 Mont. 161, ¶ 13, 951 P.2d 1388, ¶ 13. We agree that § 27-9-102(3), MCA, does not apply to the confessions of judgment at issue. The statute applies to a situation where a party-plaintiff takes a confession of judgment as security against a future contingent liability. In the present case, the confessions of judgment were not taken as security against a contingent liability. Rather, pursuant to § 27-9-102(1), MCA, the confessions of judgment were for a "specified sum" based upon the Huntsingers' claims in the underlying suit.

¶34 In conclusion, we affirm the District Court's conclusion that FUMIC owed Staples a duty to defend. We hold that since FUMIC unjustifiably refused to honor that duty, it is

14

estopped from denying coverage, and Staples is entitled to summary judgment. We reverse the District Court's conclusion that Staples was not an additional insured under the FUMIC policy. We affirm the issues raised on the cross-appeal and remand for further proceedings consistent with this opinion.

/S/ W. WILLIAM LEAPHART

We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JIM RICE