JUSTICE RICE,
dissenting.
*200 ¶50 I dissent. Respectfully, I believe this decision will bring confusion to the determination of an insurer’s duty to defend, an area of the law which is now clear. I begin with a discussion of the Court’s Opinion to point out what are, in my view, flaws in the reasoning and adverse consequences of the new rules. I end by proposing a means to resolve cases such as this one which adheres to the clear precedent we have provided since Staples.
¶51 The Court holds that when a filed complaint does not present a claim covered by an insurance policy, the insurer must nonetheless defend if it has other “information that could give rise” to a duty to defend and indemnify. Opinion, ¶ 30. The Court further explains that:
This does not require an insurer to seek out such information — as we have previously held, insurers that look at facts beyond the allegations in the complaint do so at their own risk as they will be required to defend and/or indemnify based on the information discovered. Farmers Union Mut. Ins. Co. v. Staples, 2004 MT 108, 321 Mont. 99, 90 P.3d 381.
¶52 However, the Court’s position that it is “not requir[ing] an insurer to seek out such information” is not plausible. Insurers must seek out information to fulfill their obligation under the Unfair Trade Practices Act to conduct a reasonable investigation. See § 33-18-201(4), MCA (insurers may not “refuse to pay claims without conducting a reasonable investigation”); Lorang v. Fortis Ins. Co., 2008 MT 252, ¶ 86, 345 Mont. 12, 192 P.3d 186 (“As we have previously observed, the UTPA is designed to protect claimants against insurers who would deny a claim without first conducting a reasonable investigation.”). In Shilhanek v. D-2 Trucking, Inc., 2003 MT 122, ¶ 37, 315 Mont. 519, 70 P.3d 721, we reversed a summary judgment entered in favor of an insurer on a claim of failing to reasonably investigate under § 33-18-201(4), MCA, on the simple ground the insurer was alleged to have failed to obtain a police report about the subject accident. Insurers have an obligation to seek out information, and I believe this decision will add confusion to the law by stating they do not. Further, the Court’s statement that insurers will be required “to defend and/or indemnify based on the information discovered” outside the complaint could likewise create a strange incentive for insurers to avoid knowledge of the facts-one which would be inconsistent with the requirements of the UTPA.
¶53 Staples was an important holding in which we took pains to clarify that an insurer’s duty to defend was based upon the pleadings, and we have since consistently followed that decision. I believe the *201 Opinion’s survey of thirty years of cases and the classification into three scenarios overlooks the corrective course we chartered in Staples. We provided clear rules, explaining that “[t]he insurance company must look to the allegations of a complaint to determine if coverage exists under an insurance policy, thus giving rise to the insurer’s duty to defend” and that “[t]he duty to defend arises when a complaint against an insured alleges facts, which if proven, would result in coverage.” Staples, ¶¶ 20-21 (citations omitted). We further instructed that “[t]he insurer is under a duty to construe the factual assertions from the perspective of the insured rather than solely from the insurer’s own perspective,” that “a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated,” and that “[ujnless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy’s coverage, an insurer has a duty to defend.” Staples, ¶ 22. By my count, in the five years since Staples was decided, it has been cited in our cases for these principles 16 times. The three case scenarios offered by the Court, and on which it bases its decision, have not occurred since Staples, most notably Burns and Strecker, which excused insurers from the duty to defend on the basis of information outside the complaint. It is this approach about which we cautioned in Staples, holding that such a strategy is pursued at the insurer’s risk. The Court uses Burns and Strecker as the reason a new corresponding rule must be created requiring insurers to accept the duty to defend on the basis of outside information. See Opinion, ¶ 30 (‘We conclude this same analysis should be utilized when the complaint does not present a claim which on its face is covered by the policy, but the insurer nonetheless has information which could give rise to a duty to defend ....”). However, this is a “straw man” analysis. Staples has relegated Burns and Strecker to the ash heap. As noted by counsel during oral arguments, no longer will insurers look outside the complaint to deny coverage, as Staples has made it entirely too risky to do so.
¶54 The Court purports to distinguish Staples on the ground that Staples involved a disputed fact (the ownership of the horse), whereas the critical fact here (Manchester’s involvement) was undisputed. See Opinion, ¶ 32. With all respect, I believe the Court does a disservice by uprooting established rules governing the insurer’s duty to defend based upon whether or not facts in a particular case are disputed. Disputed facts are to be resolved in favor of coverage, but that is not *202 the question. The question is to what source an insurer should look to determine whether a claim asserted against the insured comes under the policy’s coverage. I submit that source should be the pleadings.
¶55 Beyond our precedent for that rule, this is common sense. Pleadings contain the actual claims brought against the insured. Communications, reports, investigations, other extra-litigation materials-even discovery-do not. A claimant can only obtain judgment against the insured for what is claimed in the pleadings. An insurer may be aware, from its investigation, of many facts which could support various claims against the insured. However, if those claims are not actually brought, why should the insurer be required to defend against them? Although the Court here is concerned that a complaint is drafted by the claimant, over whom the insured has no control, see Opinion, ¶ 39, this is the inherent nature of all litigation. A claimant is entitled to draft his own complaint, and he may or may not draft it in a manner that triggers coverage. That reality should not dictate the rules governing an insurer’s duty to defend. As the Court notes, we have long understood that “if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation [to defend], at least initially. Stated differently, the insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case.” McAlear, 158 Mont. at 457, 493 P.2d at 334 (emphasis added). Here, consistent with McAlear, St. Paul was initially free of the obligation to defend because the complaint did not assert a claim based upon Manchester’s involvement.
¶56 The Court’s determination to create new rules is driven by the apparent inequity it sees in St. Paul having “actual knowledge of the facts” giving rise to coverage, but which were not pled in the complaint. Opinion, ¶ 27. The solution I would offer for that problem is below, but I would first note that the Court’s approach creates for every case a “what did they know and when did they know it” inquiry to determine the insurer’s duty to defend, essentially requiring an insurer to defend every case until it obtains a judgment to the contrary in a separate declaratory action. This is evident by the Court’s distinguishing of our decision in Rumph. The Court reasons that “unlike ini? umph, St. Paul undeniably had knowledge ofManchester’s responsibility for Phillips’ damage before Phillips’ Complaint was ever filed ....” Opinion, ¶ 38 (emphasis in original). Abandoning the certainty of the rules we crafted in Staples in favor of such factual *203 hairsplitting, inevitably spurring additional litigation, should give us pause.
¶57 I believe there is a solution for cases such as this which would continue to honor our recent precedent. First, I would retain our rules governing the duty to defend, stated best in Staples, clarifying only that an insurer must initially decide its duty to defend from the pleadings-constvued, as we have held, in favor of the insured. Staples commonly referred to the “complaint,” but claims can also rise in later pleadings, such as here, where the Manchester claim arose in a third party complaint. After the initial complaint, if further pleadings are filed, these also must be submitted to the insurer to determine whether it has a duty to defend thereunder. This would constitute the “initial” determination. McAlear, 158 Mont. at 457, 493 P.2d at 334. Then, if either side wants the coverage question to be determined by a court on the basis of information outside the pleadings-either the insured, who wants to establish coverage by additional information, or the insurer, who wants the absence of coverage declared by additional information-they can initiate a separate declaratory action to do so, and a court can decide the coverage question based upon the discovery conducted in that action. This was the very approach pursued in Rumph, a post-Staples case.
¶58 In this case, it is undisputed that St. Paul did know of facts that could trigger coverage with regard to Manchester’s involvement. However, conspicuously absent from the Court’s opinion is any indication that St. Paul was advised or informed that a claim alleging Manchester’s involvement had been filed in any pleading in the lawsuit. In oral argument, St. Paul stated they were never advised of the third party complaint which Revelation had filed against Manchester. I assume the Court has chosen to be silent on the issue because, without notification that a claim involving Manchester had been pled, a duty to defend by St. Paul would not have arisen under our recent jurisprudence. Because Revelation did not establish that it notified St. Paul that a pleading alleging Manchester’s involvement was filed in the underlying lawsuit, which Revelation litigated to a conclusion, Revelation should not be allowed to escape what has been our recently clear rule, that the duty to defend is triggered by the pleadings. Instead, the Court is holding St. Paul responsible for failing to anticipate that this Court would deviate from our recently clear jurisprudence.
¶59 I would affirm.