FILED

September 9 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

DA 07-0612

## IN THE SUPREME COURT OF THE STATE OF MONTANA

### 2008 MT 310

LLOYD A. TWITE FAMILY PARTNERSHIP, LLOYD
A. TWITE, individually, SCOTT TWITE, d/b/a SCOTT
TWITE CONSTRUCTION, and C. & L. TRUST,

      Petitioners and Appellants,

  v.

UNITRIN MULTI LINE INSURANCE, and
SECURITY NATIONAL INSURANCE CO.,

      Defendants and Appellees.

FILED

SEP  9 2008

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Fourth Judicial District,
                    In and For the County of Missoula, Cause No. DV 03-62
                    Honorable Edward P. McLean, Presiding Judge

COUNSEL OF RECORD:

    For Appellants:

        James A. Manley; Manley Law Firm; Polson, Montana

        Quentin M. Rhoades; Sullivan, Tabaracci & Rhoades, P.C.;
        Missoula, Montana

    For Appellees:

        Gary L. Graham, Randall J. Colbert; Garlington, Lohn & Robinson;
        Missoula, Montana

Submitted on Briefs:  July 2, 2008

Decided:  September 9, 2008

Filed:

                                  Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

¶1    The Lloyd A. Twite Family Partnership, Lloyd A. Twite, Scott Twite, d/b/a Scott Twite Construction, and C. & L. Trust (collectively, "the Twites"), appeal the order from the Fourth Judicial District Court granting summary judgment in favor of Unitrin Multiline Insurance and Security National Insurance ("Security National"). We affirm.

## BACKGROUND

¶2    The Twites operate a construction company which builds housing complexes. The Twites held a commercial package insurance policy with Security National that included the Commercial General Liability ("CGL") policy at issue here. Under the CGL policy, Security National had a duty to defend the Twites against lawsuits alleging "bodily injury" that resulted from a covered "occurrence." Both terms are specifically defined in the policy and discussed in more detail below.

¶3    Montana Fair Housing, Inc. ("MFH") and its Executive Direction Robert Liston ("Liston") filed a complaint in federal court against the Twites, alleging several counts of negligence, as well as violations of the federal Fair Housing Act ("FHA") and the Montana Human Rights Act ("MHRA"). The complaint was brought on behalf of MFH and Liston, and on behalf of MFH's staff, members, and constituents who are disabled or have family members with disabilities (collectively, "Plaintiffs"). The Plaintiffs alleged that the design and construction of several housing complexes designed and built by the Twites failed to comply with state and federal requirements, and thus denied equal use and access to persons with disabilities. The complaint charged the Twites with intentionally violating Plaintiffs' fair housing rights and engaging in a pattern of

2

discrimination against those with disabilities in the design, construction, operation, and management of these housing complexes.

¶4 The Twites tendered the claim to Security National for defense. Security National refused to defend or indemnify, explaining that it did not believe the Plaintiffs' complaint alleged any property damage, bodily injury, or occurrence covered by the policy. During discovery, the Twites sought a more specific description of the Plaintiffs' injuries. Liston responded that he was seeking damages for "compensable emotional harm based on the emotional impact to him as a result of the denial of his rights to access the subject property and the violation of his fundamental rights. . . ." Liston also refused to admit that he did not suffer "personal injury." The Twites forwarded this information to Security National, arguing that Liston's claim for emotional damages fell within the definition of "bodily injury" under Montana law. Again, Security National refused to defend or indemnify.

¶5 The Twites subsequently filed this suit against Security National, alleging statutory and common law breach of contract and breach of statutory duties. Security National moved for summary judgment, arguing that as a matter of law, no duty to defend existed because no bodily injury or property damage was alleged on the face of the complaint. In response, the Twites filed a motion for partial summary judgment on the breach of contract issue, which the District Court denied. The District Court granted Security National's summary judgment motion, and found that none of the allegations made in the Plaintiffs' complaint were covered under the policy and thus, Security National had no duty to defend. The Twites appeal this order.

3

## STANDARD OF REVIEW

¶6 We review *de novo* a district court's decision to grant summary judgment, using the criteria set forth in M. R. Civ. P. 56. *Hogenson Const. of North Dakota v. Montana State Fund*, 2007 MT 267, ¶ 11, 339 Mont. 389, ¶ 11, 170 P.3d 471, ¶ 11. We review a district court's conclusions of law to determine whether they are correct. *Hogenson*, ¶ 11.

## DISCUSSION

¶7 An insurer has a duty to defend its insured against complaints that allege "facts which represent a risk covered by the terms of [the] insurance policy." *Blair v. Mid-Continent Cas. Co.*, 2007 MT 208, ¶ 15, 339 Mont. 8, ¶ 15, 167 P.3d 888, ¶ 15. To determine whether Security National had a duty to defend the Twites, we look first to the coverage afforded by the policy, and next, to the facts alleged by MFH's complaint, to determine whether the alleged facts fall within the policy's coverage.

### A. Coverage Under the Policy

¶8 The scope of an insurer's duty to defend its insured is determined by the language of the insurance policy. *Grimsrud v. Hagel*, 2005 MT 194, ¶ 34, 328 Mont. 142, ¶ 34, 119 P.3d 47, ¶ 34 (citation omitted). If the facts alleged in the complaint do not come within the policy's terms, then there is no duty to defend. *Grimsrud*, ¶ 34. The Twites' CGL policy provides:

> We [Security National] will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

4

The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

This policy only covers bodily injury that: 1) occurs during the policy period, and 2) "is caused by an 'occurrence' that takes place in the 'coverage territory.'" An "occurrence" is "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." In sum, under this CGL policy, Security National has a duty to defend the Twites against complaints that allege bodily injury arising from an accident which occurred during the policy period and within the coverage territory.

**B. Facts Alleged in MFH's Complaint**

¶9 The Plaintiffs alleged the following injuries in their federal complaint:

> [Plaintiffs] have been denied an increase in the accessible housing stock [in Missoula]. . . .
>
> Plaintiffs have suffered injury to their ability to carry out the purpose of Montana Fair Housing to find and to make available decent, affordable and accessible rental housing for persons regardless of disability. . . .
>
> Plaintiff Bob Liston has suffered injury to his ability to perform his job. . . .
>
> Plaintiff MFH [has] suffer[ed] economic losses in staff pay, in the inability to undertake other efforts to end unlawful housing practices, in lost opportunities to pursue funding, and in other diversion of resources. . . .

The complaint sought declaratory and injunctive relief, as well as damages, to compensate for these alleged harms.

¶10 The duty to defend is triggered when a complaint alleges facts that, if proven, would result in coverage. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, ¶ 21, 321 Mont. 99, ¶ 21, 90 P.3d 381, ¶ 21. None of the injuries alleged by MFH on the face of the complaint come within the policy definition of "bodily injury." Each injury

5

alleged by MFH stems from the Twites' design and construction of the housing complexes. The Twites' alleged failure to comply with the requirements of the FHA and the MHRA is not an accident that meets the definition of "occurrence" under the CGL policy. Even if we assume that every allegation in MFH's complaint were true, no fact alleged on the face of this complaint would bring it within the coverage of the CGL policy. In short, no duty to defend is triggered by the allegations on the face of this complaint.

¶11 The Twites, however, argue that Security National should have looked beyond the four corners of the complaint in assessing whether or not it had a duty to defend. The Twites claim that during discovery, information was revealed which triggered Security National's duty to defend. In response to the Twites' requests for admission, the Plaintiffs refused to admit that they had not suffered personal injury:

> **Request for Admission No. 18:** Please admit Plaintiffs did not suffer personal injury, including emotional distress, because of these Defendants [sic] actions, errors or omissions.
>
> **MFH Answer:** Admit to the extent the organization cannot sustain such personal injury but deny to the extent Montana Fair Housing [sic] sustained diversion of resources and frustration of its organizational goals and purposes.
>
> **Liston Answer:** Deny.

Additionally, in response to the Twites' interrogatories, Liston stated he was seeking damages for the "compensable emotional harm" he suffered, "based on the emotional impact to him as a result of the denial of his rights to access the subject property and the

violation of his fundamental rights in that regard." Emotional injury, the Twites argue, is a form of bodily injury under Montana law in some circumstances.

¶12 We do not reach the question of whether Security National had a duty to look beyond the four corners of the complaint in assessing its duty to defend. Even assuming that a duty to defend could arise from facts uncovered during discovery, the facts alleged above still do not come with the policy's coverage.

¶13 Even if we assume that Liston did suffer "compensable emotional harm" and that emotional harm could qualify as "bodily injury" under the policy's definition, the alleged emotional harm did not arise from a covered "occurrence." As discussed above, the scope of the insurer's duty to defend is defined by the language of the policy. *Grimsrud*, ¶ 34. The Twites' policy only covers bodily injuries that arise from "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." The Plaintiffs allege that their injuries occurred as a result of the design and construction of the housing units—not as a result of an accident. Liston's alleged injury, regardless of whether it constitutes "bodily injury" did not result from a covered occurrence. Therefore, Liston's claim fell outside the policy's coverage.

¶14 The Twites rely heavily on *Staples* for the proposition that the insurer has a duty to defend the claim unless it has been "unequivocally demonstrated" that the claim falls outside of the policy's coverage. In *Staples*, we held:

> Unless there exists an unequivocal demonstration that the claim against the insured does not fall within the policy coverage, the insurer has a duty to defend. In other words, if there is any dispute as to the facts relevant to coverage, those factual disputes must be resolved in favor of coverage.

7

*Staples*, ¶ 24 (internal citation omitted). There is a crucial difference between *Staples* and the instant case: in *Staples*, the facts allegedly giving rise to coverage were disputed. Here, there is no factual dispute.

¶15 Courts must liberally construe the allegations of a complaint in favor of finding an obligation to defend. *Staples*, ¶ 22. Where a claim falls unequivocally outside the policy's coverage, however, there is nothing for the court to construe, and no reason to impose a duty to defend. *See e.g. Hogenson*, ¶ 20 (the insured failed to file his claim within the mandatory six month period, thus no coverage existed); *Farmers Union Mut. Ins. Co. v. Rumph*, 2007 MT 249, ¶ 25, 339 Mont. 251, ¶ 25, 170 P.3d 934, ¶ 25 (facts alleged in the complaint did not fall within the insured's GCL policy; facts not alleged in the complaint were disregarded); *New Hampshire Ins. Group v. Strecker*, 244 Mont. 478, 481, 798 P.2d 130, 131 (1990) (molestation was not a covered "occurrence"); *Graber v. State Farm*, 244 Mont. 265, 270, 797 P.2d 215-17 (1990) (complaint alleging trademark and copyright violations did not meet policy's definition of "occurrence").

¶16 In the instant case, the facts alleged in the complaint and during discovery were unequivocally outside the policy's coverage. MFH did not present any facts on the face of the complaint or in discovery, which, if true, would result in coverage. Thus, the District Court did not err in concluding that the allegations made in MFH's complaint unequivocally fell outside the policy's coverage.

## CONCLUSION

¶17 The Twites have failed to demonstrate that a genuine issue of material fact existed with respect to whether Security National had a duty to defend the Twites against the

MFH suit. Neither the facts alleged on the face of the complaint nor the facts disclosed during discovery constitute a covered occurrence within the terms of the policy. The District Court did not err in concluding that the complaint was unequivocally outside the policy's coverage, and thus, as a matter of law, Security National had no duty to defend. We affirm the District Court's grant of summary judgment in favor of Security National.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

9