

DA 07-0752

IN THE SUPREME COURT OF THE STATE OF MONTANA

2009 MT 123

REVELATION INDUSTRIES, INC.,
formerly known as Revelation Engineering, Inc.,

      Plaintiff and Appellant,

  v.

ST. PAUL FIRE & MARINE INSURANCE COMPANY,

      Defendant and Appellee.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                  In and For the County of Gallatin, Cause No. DV 2001-472
                  Honorable Mike Salvagni, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Robert L. Sterup (argued), Holland & Hart, LLP, Billings, Montana

        For Appellee:

            Guy W. Rogers (argued), Jon A. Wilson, Brown Law Firm, P.C.,
            Billings, Montana

                              Argued and Submitted:  January 14, 2009

                                      Decided:  April 10, 2009

Filed:

              _____
                              Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1      Revelation Industries (Revelation) sued its insurer, St. Paul Fire & Marine Insurance Company (St. Paul), for refusing to defend and indemnify Revelation in a lawsuit with Phillips Environmental Products, Inc. (Phillips). The Eighteenth Judicial District Court ruled that St. Paul had no duty to defend Revelation. Revelation appeals. We reverse and remand.

## ISSUES

¶2      A restatement of the issues on appeal is:

¶3      Did the District Court err when it determined that St. Paul had no duty to defend Revelation based on the contents of Phillips' complaint?

¶4      Did the policy requirement of an "event" excuse coverage in this case?

## FACTUAL AND PROCEDURAL BACKGROUND

¶5      In 1999, Revelation and Phillips entered into an oral arrangement under which Revelation would design and develop for Phillips a specific product known as a WAG Bag. This bag was a disposable sanitary bag to be used with Phillips' portable environmental toilets. Revelation, in turn, subcontracted with Manchester Packaging Corporation (Manchester) to produce these bags in accordance with Phillips' specifications. Notwithstanding Manchester's written affirmation that the produced bags met Phillips' specifications, the bags Manchester shipped to Revelation did not contain cornstarch as required by Phillips. Revelation, without knowledge of the bags' nonconformity, provided them to Phillips. Phillips promptly claimed the bags did not meet its requirements and in March 2000 terminated its relationship with Revelation.

2

¶6 Over the next several months, Revelation made numerous futile attempts to meet with Phillips in an effort to resolve Phillips' concerns and salvage the parties' arrangement. Finally, at a meeting of the parties on October 4, 2000, Phillips claimed to have suffered significant damages for which it held Revelation responsible. Because St. Paul was its insurer under a Commercial General Liability (CGL) policy, the following day, Revelation contacted St. Paul by telephone, informed the insurer of the potential claim, and requested coverage. St. Paul responded by memorializing the conversation in a letter to Revelation. In this letter, St. Paul reiterated the following facts:

> As I understand this matter, Revelation Engineering entered into a verbal joint venture with Phillips Enviro to produce a field toilet. Your responsibility was to design a biodegradable bag system for the human waste. Your [sic] were to be paid a royalty by Phillips for your design. You contracted the manufacture of the bag system to Manchester Packaging Corp. Apparently, Manchester left out cornstarch as a component of the polymer bag system. The omission was discovered by Phillips, and they have indicated a claim against you . . . . You have requested a written statement of claim from Phillips, which you have yet [sic] received.

¶7 On October 20, 2000, Phillips demanded from Revelation compensation for damages it claimed to have suffered as a result of Revelation's failure to provide it with a conforming product. This demand letter made no mention of Manchester's production of the nonconforming bags, despite Phillips' knowledge that Revelation engaged Manchester as its subcontractor to develop and manufacture these bags. On October 26, Revelation's attorney forwarded Phillips' letter to St. Paul and again requested defense and indemnity under the CGL policy Revelation held through St. Paul. Notably, in November 2000, a St. Paul interoffice memorandum obtained in discovery referenced

3

Manchester's manufacture of the defective bags, but nonetheless concluded that the damages were not the result of an "event" and that several policy exclusions applied. On December 11, 2000, St. Paul notified Revelation in writing that various policy exclusions applied; therefore, it would not defend and indemnify Revelation against Phillips' claim.

¶8 In February 2001, Phillips filed a complaint against Revelation in the same district court as that in which the present action was filed, seeking damages stemming from the nonconforming production. Notably, the complaint did not reference Manchester's role in producing the WAG bags. Revelation forwarded the complaint to St. Paul. St. Paul reviewed the complaint and again declined coverage. Revelation subsequently funded its own defense against Phillips' claim and, in May 2001, filed a third-party complaint against Manchester.

¶9 In December 2001, Revelation sued St. Paul claiming that St. Paul had breached the policy contract. The Complaint sought defense costs and indemnity. However, a summons was not served on this Complaint until December 2002. St. Paul did not answer the Complaint and no other filings occurred in this case until November 2004 when Revelation filed its First Amended Complaint. St. Paul subsequently filed a timely answer in which it counterclaimed for a declaratory ruling that it was not obligated to defend Revelation on the grounds that the CGL policy contained numerous applicable exclusions to coverage.

¶10 During this time, Revelation continued to defend itself against Phillips' action and pursue its third-party action against Manchester. In September 2006, the District Court

4

ruled against Phillips and in favor of Revelation, and awarded Revelation approximately $431,000 in damages.

¶11    In May 2007, in the present case, both St. Paul and Revelation moved for summary judgment.  In its motion, Revelation argued that the exclusions cited by St. Paul were inapplicable and that the subcontractor provision of the insurance policy rendered coverage for the claim.  St. Paul, in its reply to Revelation's motion, restated its "exclusions" arguments but also argued that the facts alleged in Phillips' complaint—specifically the absence of mention of Manchester—justified its denial of a defense and indemnity.  The District Court held a hearing on the motions in September 2007.  In December 2007, the District Court granted St. Paul's motion, ruling that while the insurance policy provided "coverage for a defective product manufactured by a subcontractor such as Manchester," because Phillips' complaint did not include actual reference to Manchester's role, it did not allege facts that would give rise to insurance coverage under Revelation's policy with St. Paul.  Consequently, it concluded that St. Paul was not obligated to defend or indemnify Revelation for Phillips' claims.

¶12    Revelation filed a timely appeal.

## STANDARD OF REVIEW

¶13    Our standard of review in appeals from summary judgment rulings is de novo. We review a district court's conclusions of law to determine whether they are correct and its findings of fact to determine whether they are clearly erroneous.  *Tractor & Equipment Co. v. Zerbe Bros.*, 2008 MT 449, ¶ 12, 348 Mont. 30, 199 P.3d 222 (citations omitted).

5

**DISCUSSION**

¶14  *Did the District Court err when it determined that St. Paul had no duty to defend Revelation based on the contents of Phillips' complaint?*

¶15  St. Paul and Revelation disputed the interpretation and application of several provisions contained in Revelation's CGL policy. The disputed provisions relevant to this appeal are whether this claim constituted an "event," and whether this claim is excluded under the "completed work" exclusion or covered under the "subcontractor exception" to that exclusion.

¶16  The St. Paul policy provides coverage for Revelation against bodily injury and property damage liability that is caused by an "event." "Event" is defined as an "accident." "Accident" is not defined in the policy. In addition to requiring that an "event" occur before coverage is accepted, the policy contains several exclusions to coverage. The relevant exclusion in this case is the "completed work" exclusion.

¶17  The "completed work" exclusion states:

> We won't cover property damage to any of your products that's caused by the product itself or by any of its parts.
>
> . . .
>
> Nor will we cover property damage to your completed work that's caused by the work itself or by any of its parts. But we won't apply this exclusion part if . . . the damaged completed work, or the completed work that causes the property damage, was done for you by others.

This last clause is the "subcontractor exception" to the "completed work" exclusion, the application of which is disputed in this case.

¶18  As the facts above indicate, St. Paul clearly knew that Revelation's subcontractor, Manchester, manufactured the defective bags that gave rise to Phillips' claim against

6

Revelation. Nonetheless, St. Paul denied coverage on several grounds including that the subcontractor provision was inapplicable because Phillips' complaint did not reference, allege or suggest subcontractor involvement. The District Court determined that the dispositive question was whether St. Paul, when evaluating its obligation to defend Revelation, was entitled to look exclusively to the allegations of Phillips' complaint, or whether its was obligated to incorporate into its coverage evaluation its undisputed knowledge that Revelation had hired a subcontractor and the subcontractor's work had caused Phillips' damage.

¶19 Despite concluding that the CGL policy would cover Revelation for damages caused by a subcontractor, the District Court held that "only the facts alleged in the Complaint against the insured trigger the duty to defend, not any facts alleged in the Third-Party Complaint against a third-party who is not insured under the policy." As a result of this legal interpretation, the court ruled that St. Paul had no duty to defend or indemnify Revelation because Phillips' complaint did not implicate Manchester; therefore, the complaint did not raise the prospect of the application of the subcontractor provision. This being so, the claims presented against Revelation in the complaint were excluded from coverage under the policy.

¶20 Revelation argues on appeal that when an insurer has actual knowledge of a fact that would give rise to coverage, it may not ignore such knowledge and simply look at the contents of the complaint and deny coverage. As such, it asserts, the District Court should have ruled that St. Paul was required to defend and indemnify Revelation against Phillips' claim under the subcontractor exception. In addition to relevant general contract

7

and insurance contract law, Revelation relies upon a line of cases holding that an insurer's duty to defend can arise when the insurer receives notice of a covered risk through "pleadings, discovery, or through notice of final issues declared ready for trial." Based upon these cases, Revelation maintains that the "actual facts" of this case, as opposed to the language Phillips chose to use in its complaint, show that St. Paul had full knowledge of Manchester's involvement and, therefore, under the policy's subcontractor provision, it had a duty to defend Revelation.

¶21    St. Paul relies on a separate line of cases that specifically state that an insurer need look only to the facts alleged in a complaint to determine whether it has a duty to defend its insured. Acknowledging the existence of contrary caselaw, St. Paul suggests that these contrary cases inject "confusion" into well-established caselaw and were correctly disregarded by the District Court.

¶22    As suggested by the foregoing summary of the parties' positions, there are cases in our jurisprudence addressing and resolving various duty-to-defend situations, each with its own factual anomalies. For the most part, however, these cases can be divided into three scenarios:

- Scenario (1) the complaint clearly alleges facts that come within the coverage of the liability policy. This scenario requires the insurer to defend its insured with no need to look beyond the allegations in the complaint. (*See e.g. Atcheson v. Safeco Insurance Company*, 165 Mont. 239, 527 P.2d 549 (1974));

- Scenario (2) the complaint alleges facts that do *not* come within the coverage of the liability policy *and* the insurer has no knowledge of any other facts that could result in coverage. Under these circumstances, we have held that the insurer has no duty to defend its insured. (*See e.g. McAlear v. St. Paul Insurance Companies*, 158 Mont. 452, 493 P.2d 331 (1972)); and

8

- Scenario (3) the complaint alleges facts that come within the coverage of the liability policy, but the insurer knows of other actual facts that *negate* coverage. This scenario relieves the insurer of its duty to defend. (*See e.g. Burns v. Underwriters Adjusting Co.*, 234 Mont. 508, 765 P.2d 712 (1988)).

It is apparent that none of these scenarios is identical to that presented here. In this case, Phillips' complaint alleged no facts that would seemingly compel coverage under the liability policy, yet the insurer had actual knowledge of facts that could result in coverage. In other words, this is the corollary to scenario (3). Against, this backdrop, we turn to the parties' arguments.

¶23 St. Paul asserts that *McAlear*, *Atcheson,* and *Northwestern Nat. Cas. Co. v. Phalen*, 182 Mont. 448, 597 P.2d 720 (1979), clearly establish the rule that a "liability insurance company has no duty to defend a suit brought by a third-party against the insured where the petition or complaint in such suit upon its face alleges a state of facts which fails to bring the case within the coverage of the policy." *McAlear*, 158 Mont. at 456, 493 P.2d at 334.

¶24 In *McAlear,* McAlear, an attorney insured under a professional liability policy, demanded that his insurer defend him against a complaint arising from the negligent operation of his private airplane which caused damage to other airplanes. The insurer refused on the ground that the policy did not cover this type of event. The case was submitted on stipulated facts which included pleadings, stipulated exhibits and discovery proceedings; as a result, there was no issue regarding the adequacy of the allegations in the complaint for purposes of determining a duty to defend. *McAlear*, 158 Mont. at 453, 493 P.2d at 332-33. The question before the court was whether an insurer's obligation to

9

defend is independent from its obligation to indemnify. In other words, when it is apparent that the allegation is not a covered event under the policy, must the insurer nonetheless defend its insured? We ruled in *McAlear* that it need not. Quoting 44 Am.Jur.2d, Insurance, § 1539 (currently 44 Am.Jur.2d, Insurance, § 1400), we explained that:

> Upon the basis of the allegations of the complaint or petition, the courts have adopted the following tests for determining whether particular allegations require the insurer to defend the action brought against the insured: if the complaint in the action brought against the insured upon its face alleges facts which come within the coverage of the liability policy, the insurer is obligated to assume the defense of the action; but if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation, at least initially. Stated differently, the insurer is under an obligation to defend only if it could be held bound to indemnify the insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case.

*McAlear*, 158 Mont. at 456-57, 493 P.2d at 334. This was the first time we expressly linked the allegations in a complaint to an insurer's duty to defend. It is important to note, however, that the foregoing statement was made in the context of the facts of *McAlear*—facts that made it unnecessary for the Court to isolate its analysis to the allegations contained in the complaint. This case is an example of scenario (2)—the complaint alleged negligence in private airplane operation while the policy covered attorney professional liability. The policy clearly did not cover this event and the insurer had no knowledge of facts that would bring the event inside the policy's coverage. *See also Graber v. State Farm Fire and Cas. Co.*, 244 Mont. 265, 797 P.2d 214 (1990), in which the Court cited the "allegations in the complaint" language from *McAlear* in ruling

10

that the "occurrence" giving rise to the claim against the insured was not covered by the policy, and therefore the insurer had no duty to defend.

¶25    In *Atcheson*, Atcheson, a taxidermist, was sued for misplacing, destroying or mishandling a customer's trophies. The insurer denied liability asserting that the claims in the complaint were not covered by the policy. Citing the relevant language from the policy, we disagreed and held that the allegations in the complaint were "within the perils enumerated entitling [Atcheson] to a defense." *Atcheson*, 165 Mont. at 247, 527 P. 2d at 553. Again, there was no reason for the Court to look beyond the four corners of the complaint because the allegations in the complaint were clearly covered by the policy.

¶26    In *Phalen,* Phalen was involved in a physical altercation outside of a bar that resulted in serious injury to another bar patron. Phalen was charged with felony aggravated assault and pled guilty under a plea bargain. *Phalen*, 182 Mont. at 451-52, 597 P.2d at 721-23. The victim brought a civil suit against Phalen alleging both willful assault *and* negligence. *Phalen*, 182 Mont. at 453, 597 P.2d at 723. In a declaratory action, the district court granted the insurer's motion for summary judgment ruling that the incident, being intentional, was not a covered event and therefore the insurer had no obligation to defend. *Phalen*, 182 Mont. at 454, 597 P.2d at 724. On appeal, we reversed the district court on the ground that factual questions precluded summary judgment. Specifically, there was a question as to whether the single blow struck by Phalen caused the victim's injuries, or whether the subsequent intervening act of a third person tripping the victim and sending him crashing to the ground caused or contributed to the injuries. In addition, the manner in which the incident occurred raised a question of fact as to

11

whether the victim's injuries were expected or intended by Phalen. In this connection, we stated that "the pleadings themselves, particularly count II, stated a cause which fits within the policy coverage and in that situation, [the insurer] has a duty to extend a defense . . . to Phalen." *Phalen*, 182 Mont. at 461, 597 P.2d at 727. Based on the cases relied upon by the Court, it would appear that the Court, in referring to "the pleadings," meant the complaint. *See Reliance Insurance Company v. Fisher*, 164 Mont. 278, 286, 521 P.2d 193, 196.

¶27 These cases illustrate that when a complaint presents allegations of events or occurrences that are covered under the defendant's insurance policy, the insurer must defend its insured; conversely, if the allegations in the complaint clearly present an event or occurrence that is *not* covered under the policy, the insurer may refuse to defend. The more difficult case, such as the one before us, involves an insurer who has actual knowledge of facts that are not included in the complaint. Under such circumstances, may that insurer take advantage of its knowledge of facts which negate the duty to defend? And, conversely, may the insurer ignore such facts if they would trigger an obligation to defend? Until today, we have decided no cases that answer this second question but at least two cases that answer the first.

¶28 In *Burns*, Burns was struck by Zeiler, who was insured by both Underwriters' and Continental Insurance Company. Burns sued Zeiler, alleging that Zeiler had negligently struck him. Presented as a "negligence" claim in the complaint, the event would have arguably been covered by Zeiler's insurance. Upon receiving notice of the claim, however, the insurers interviewed Zeiler, their insured, who disclosed categorically that

he *intentionally* struck Burns. Underwriters and Continental subsequently denied coverage and refused to defend Zeiler because the intentional nature of the incident placed it outside of Zeiler's coverage. The suit ended in a default judgment against Zeiler who then assigned any claims he may have had against his insurers to Burns. *Burns*, 234 Mont. at 509, 765 P.2d at 712-13. Burns sued Underwriters and Continental and the district court concluded that, based on the insurers' actual knowledge of the events, the insurers correctly determined that they had no duty to indemnify or defend. We agreed, specifically rejecting Burns' argument that the rule in *Phalen*—the allegations in the complaint alone are to be used to determine the duty to defend—applied under these facts. Rather, we said, "the proper focus of inquiry is the acts giving rise to coverage, not the language of the complaint." *Burns*, 234 Mont. at 510, 765 P.2d at 713. *Burns* squarely falls within scenario (3) above.

¶29     Another case in which the Court looked beyond the allegations in the complaint to resolve a coverage question in favor of the insurer was *New Hampshire Ins. Group v. Strecker*, 244 Mont. 478, 798 P.2d 130 (1990). In *Strecker*, the victim of child molestation brought a civil action against her molester alleging "negligence." Relying on *Burns'* holding that coverage is based upon the acts giving rise to the claims, rather than the complaint's language, the district court and this Court concluded that sexual molestation could not be deemed a negligent act, and that because the policy did not cover intentional acts, the insurer correctly denied coverage.

¶30     It was apparent to this Court in *Burns* and *Strecker* that the allegations in the respective complaints were either incomplete or inaccurate, given the facts or questions

of fact presented in those cases. As a result, the Court looked beyond the allegations to the facts known by the insurer or to the actual acts giving rise to the underlying claims. In so doing, we agreed that the insurer had no obligation to defend its insured in those cases. We conclude this same analysis should be utilized when the complaint does *not* present a claim which on its face is covered by the policy, but the insurer nonetheless has information that could give rise to a duty to defend and indemnify. This does not require an insurer to seek out such information—as we have previously held, insurers that look at facts beyond the allegations in the complaint do so at their own risk as they will be required to defend and/or indemnify based on the information discovered. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, 321 Mont. 99, 90 P.3d 381. However, insurers are not entitled to simply ignore factual information supplied to them by their insureds but not alleged in the complaint or petition, where those facts would trigger a duty to defend.

¶31 Since 2004, this Court has decided several duty-to-defend cases, including *Staples* and *Blair v. Mid-Continent Casualty Co.*, 2007 MT 208, 339 Mont. 8, 167 P.3d 888, both of which were heavily relied upon by the parties and the District Court in this case. In *Staples*, a dispute arose over the ownership of a horse that had escaped a pasture and was struck by an automobile. *Staples*, ¶ 6. The driver sued Staples as if Staples both owned and was pasturing the horse at the time of its escape and the accident. *Staples*, ¶ 9. However, Staples, while pasturing the animal at the time of the incident, was not the horse's owner. Staples in turn filed a third-party complaint against Corcoran and Christopherson, whom he believed were the joint owners of the animal. He also

demanded a defense under Corcoran's insurance policy which allowed for coverage of the animal's custodian. *Staples*, ¶ 10. While there was a question of fact as to whether Corcoran was an owner of the horse at the time of the incident, the insurer nonetheless concluded unilaterally that Corcoran did not own the horse at the time and denied defense coverage to Staples and its insured. *Staples*, ¶ 11.

¶32 The District Court ruled in favor of the insurer noting that while the amended complaint stated a claim for which the insurer was required to defend, the insurer's investigation informed it that Corcoran's policy did not cover the incident. *Staples*, ¶ 13. On appeal we disagreed, observing that the fact relied upon by the insurer to deny coverage—lack of ownership by Corcoran—was a heavily disputed fact and the subject of conflicting evidence. As we have previously held, "[u]nless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Staples*, ¶ 22, citing *Insured Titles, Inc. v. McDonald*, 275 Mont. 111, 116, 911 P.2d 209, 212 (1996). There was no such "unequivocal demonstration" in *Staples*; rather, there was a material factual dispute which the insurer did not have the right to unilaterally decide. *Staples* is therefore distinguishable from this case because here, the insurer's knowledge of the existence of Revelation's subcontractor, Manchester, is not a disputed fact.

¶33 In *Blair*, Blair owned several residentially-zoned acres in the Meadows West Landowners Association subdivision (Meadows West). He began excavating gravel on his property primarily for use in developing his own property; however, he also sold some of the excavated gravel. *Blair*, ¶ 4. Meadows West sued him, seeking, among

other things, an injunction for failing to submit required construction plans and for selling gravel, both in violation of the restrictive covenants. *Blair*, ¶ 5. Blair tendered the defense and demanded coverage under his insurance policy with Mid-Continent. *Blair*, ¶ 7. Mid-Continent denied coverage on the grounds that the complaint did not allege damages stemming from bodily injury or property damage due to an "occurrence." *Blair*, ¶ 10. Blair subsequently settled with Meadows West and brought a declaratory judgment against Mid-Continent alleging that he was entitled to recover the settlement amount as well as his attorney fees and costs. *Blair*, ¶ 11. The district court ruled in favor of Mid-Continent, concluding that Blair's admitted intentional operation of the gravel excavation did not constitute an occurrence under Mid-Continent's policy; therefore, Mid-Continent was not obligated to defend or indemnify Blair. *Blair*, ¶ 12. On appeal, Blair argued that the facts alleged in the complaint, if proved true, would have required Mid-Continent to defend him; therefore the insurer and the district court erred in analyzing what constituted an "occurrence" under the policy rather than accepting the allegations of the complaint on their face. *Blair*, ¶¶ 16-17. We disagreed and held that under the policy definition of "occurrence"—which precluded intentional acts such as Blair's—Mid-Continent was justified in denying coverage. *Blair* is therefore also distinguishable and inapposite to the case before us.

¶34    In another recent case, *Twite Fam. Part. v. Unitrin Multi Line Ins.*, 2008 MT 310, 346 Mont. 42, 192 P.3d 1156, the Twite family's (the Twites) construction company built a housing complex. Montana Fair Housing, Inc. (MFH), and its executive director, Liston, subsequently sued the Twites alleging several counts of negligence as well as

statutory violations. The Twites tendered the claim to their insurer, which denied it on the ground that the complaint did not assert any bodily injury, property damage, or occurrence that was covered by the policy. *Twite*, ¶¶ 2-5. During discovery, Liston stated that he was seeking damages for "compensable emotional harm." The Twites argued that based on Liston's emotional harm claim made during discovery, the insurer should have defended them under a "bodily injury" claim. The district court ruled in favor of the insurer. Twites argued on appeal that their insurer should have looked beyond the four corners of the complaint in assessing whether or not it had a duty to defend. We stated that we would not "reach the question of whether [the insurer] had a duty to look beyond the four corners of the complaint in assessing its duty to defend. Even assuming that a duty to defend could arise from facts uncovered during discovery, the facts alleged . . . do not come with [sic] the policy's coverage." *Twite*, ¶ 12. We ruled that regardless of how or when the insurer learned of the alleged bodily injury, the fact remained that the claimed injury did not arise from a covered "occurrence" as required by the policy, and therefore the insurer had no obligation to defend.

¶35 We addressed the duty-to-defend issue most recently in *Town of Geraldine v. Mt. Mun. Ins. Authority*, 2008 MT 411, 347 Mont. 267, 198 P.3d 796. The Town of Geraldine (the Town) hired AK Drilling to construct a well. The Town's mayor subsequently asked AK to perform work outside of the scope of the original contract. Once the work was done, the Town refused to pay for the extra work. AK sued the Town for breach of contract, negligent misrepresentation and constructive fraud. *Town of Geraldine*, ¶ 3. The Town tendered the claim to its insurer, MMIA, which denied

coverage because the allegations triggered exclusions, including a breach of contract exclusion, under the insurance policy. The Town sued MMIA and both parties moved for summary judgment. The district court granted MMIA's motion and denied the Town's. *Town of Geraldine*, ¶¶ 5-6. On appeal, the Town argued that MMIA had the duty to defend it because AK's complaint made assertions involving personal injury and public official's errors that were essentially negligence, not breach of contract, claims. We affirmed the district court and concluded that the assertions in AK's complaint included breach of contract claims and other claims that were expressly excluded under the Town's policy; therefore, MMIA had the right to deny a defense. We also explained that "it is the acts giving rise to the complaint which form the basis for coverage, not the complaint's legal theories or conclusory language." *Town of Geraldine*, ¶ 24. The *Town of Geraldine* is another distinguishable case in which the allegations in the complaint do not give rise to coverage under the provisions of the insurance policy.

¶36 Finally, we turn to *Farmers Union Mut. Ins. Co. v. Rumph*, 2007 MT 249, 339 Mont. 251, 170 P.3d 934, a case upon which St. Paul heavily relies. This case arose out of a complaint filed by the family of a young man named Christian Nielsen who as a passenger was severely injured in a 4 a.m. one-vehicle accident. He and his family sued the young driver of the pickup truck, Alex Rumph, as well as Alex's father and his father's auto repair business. Among other things, the complaint alleged that Alex was intoxicated when the accident occurred, and that he had previously rendered the seat belts in the truck inoperable, exacerbating the injuries. The direct actions against Alex were resolved via settlement. Neither the complaint nor the amended complaint raised facts

18

tending to implicate the auto repair business, and the garage's insurer FUMIC denied coverage. Subsequently, the plaintiff's attorney asserted he had learned after the complaint was filed that the seat belts may have been disabled in the father's auto repair garage, and that Alex's pickup had been previously used for garage-related errands. Based upon these allegations, FUMIC accepted the garage's defense under a reservation of rights and sought declaratory relief. Such relief was granted and Rumph, as owner of the garage, appealed. We affirmed.

¶37 On appeal, Rumph argued that the amended complaint, "when considered 'together with' or 'coupled with' the facts [the plaintiff's attorney] later supplied to FUMIC's counsel" established that the disabling of the seat belts was indeed a "garage operation." *Rumph*, ¶ 17. We disagreed, noting that the amended complaint made no reference to the garage or the disabling of the seat belts in the garage, and that FUMIC was not obligated to look outside the complaint to determine if there was coverage. *Rumph*, ¶ 18. Thus, we affirmed the district court.

¶38 St. Paul argues that *Rumph* is dispositive of the instant case. We disagree for two reasons. First, *Rumph* was a declaratory action case, undertaken after FUMIC accepted the defense under a reservation of rights and sought declaratory relief, a course not pursued by St Paul here. Second, unlike in *Rumph*, St. Paul undeniably had knowledge of Manchester's responsibility for Phillips' damage *before* Phillips' complaint was even filed, and no facts in this regard were at all disputed. Thus, St. Paul had no need to look outside the complaint—it knew when the complaint was filed the true state of the facts. For these reasons, we conclude *Rumph* is inapposite.

19

¶39 Based on the foregoing, including our cases holding that an insurer may deny coverage based on knowledge of facts obtained from outside the complaint, we conclude that the converse also holds: An insurer cannot ignore knowledge of facts that may give rise to coverage under the policy simply because the complaint—which is, after all, drafted by a claimant over whose draftsmanship the insured has no control—does not allege these facts of which the insurer has knowledge. Under such circumstances, the insurer must defend. It may commence a defense under a reservation of rights while conducting an investigation, and it may commence a declaratory action, as FUMIC did in *Rumph*. It may not, however, ignore information in its possession that may give rise to coverage simply because the complaint fails to recite it, and thereupon refuse to defend.

¶40 As noted above, the District Court first determined that the subcontractor provision in the policy provided coverage for the defective product manufactured by Manchester; but it then denied coverage based on the allegations of the complaint. We agree with the court's initial determination but disagree with the latter. We therefore hold that the subcontractor exception to the policy exclusion applicable to "covered work" obligated St. Paul to defend Revelation in the suit with Phillips.

¶41 *Did the policy requirement of an "event" preclude coverage in this case?*

¶42 As noted above, both parties acknowledge that the District Court did not rule on this issue. Revelation requests that we rule, as a matter of law, that applicability of the subcontractor provision in the policy automatically satisfies the "event" requirement of the policy. St. Paul asks that we hold that the "event" requirement was not satisfied in

20

this case, and also argues that coverage was excluded under both the "impaired product" and the "product recall" exclusions.

¶43    As stated above, the St. Paul policy provides for coverage for an "event" which is defined as an "accident," and "accident" is not defined in the policy. Additionally, the policy contains an exclusion that allows St. Paul to deny coverage for property damage to Revelation's products that is caused by the product itself. The example provided in the policy indicates that an insured that manufactures air conditioners which contain several moving parts that tend to break down will not be covered for any property damage caused by the broken part or the air conditioner as a whole. The exception to this exclusion, however, is the subcontractor provision—in other words, the policy will cover property damage to an insured's products or completed work if "the damaged completed work, or the completed work that causes the property damage, was done for [the insured] by others."

¶44    Revelation argues that any ambiguity in the policy, such as may arise due to the absence of a definition of "accident," must be construed against the insurer. It also maintains that a narrow interpretation of "event" or "occurrence" such as St. Paul urges would render a subcontractor exception to the "your work" or "completed work" exclusion worthless. It asserts that the subcontractor exception demonstrates the insurer's intention to cover damages caused by a subcontractor's work, and to conclude that subcontractor-caused damage is not an "event" would render the exception wholly "superfluous and meaningless."

¶45 St. Paul counters that faulty workmanship is not an "accident"; therefore, Revelation's claim did not satisfy the policy's "event" requirement and is not covered by the policy. It continues that an "exception to an exclusion" does not give rise to coverage where none exists under the terms of the policy.

¶46 Under Montana law, any ambiguities in contracts are construed against the insurer. Additionally, "exclusions from coverage will be narrowly and strictly construed because they are contrary to the fundamental protective purpose of an insurance policy." *Wellcome v. Home Ins. Co.*, 257 Mont. 354, 356-57, 849 P.2d 190, 192 (1993) (citations omitted). While both parties primarily cite extra-jurisdictional cases to support their arguments, we are persuaded by those cases that provide coverage under similar circumstances. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1 (Tex.), in which, as part of a comprehensive discussion of standard-form CGL policy revisions vis-à-vis the subcontractor exception to the "your work" exclusion, the court stated that "when a general contractor becomes liable for damage to work performed by a subcontractor—or for damage to the general contractor's own work arising out of a subcontractor's work—the subcontractor exception preserves coverage that the 'your-work' exclusion would otherwise negate." *Lamar*, 242 S.W.3d at 11.

¶47 Moreover, we conclude that St. Paul's own example of coverage under the subcontractor exception underscores its coverage obligation here. St. Paul's policy explains:

> You construct a building as a general contractor. Some of the work is done by you while the rest is done for you by subcontractors. The building is accepted by the owner. If it's damaged by a fire caused by electrical wiring

22

installed by a subcontractor, we won't apply the exclusion. However, if the wiring was installed by you, we'll apply the exclusion to property damage to your completed work done by you.

Presumably, if a general contractor filed a claim under the circumstances in the above example for damages caused by the subcontractor's work, St. Paul would not deny it on the ground that it was not an "event." We see no substantive distinction between the example above and the present case. Manchester, Revelation's subcontractor, provided a faulty product which was passed on to and accepted by Phillips before the defect was discovered. Under such circumstances, the policy provides coverage for this subcontractor-caused damage. St. Paul had a duty to defend Revelation and to indemnify it.

¶48 Finally, we decline to address St. Paul's request that we hold that the "impaired product" and "product recall" exclusions apply. Revelation did not appeal the District Court's failure to rule on these exclusions, nor did St. Paul cross-appeal it; therefore, it has waived the right to present these claims for resolution on appeal. *Udelhoven v. Mont. Dept. of Pub. HHS (In re McGurran)*, 2003 MT 145, ¶ 18, 316 Mont. 188, 70 P.3d 734.

## CONCLUSION

¶49 For the foregoing reasons, we reverse and remand to the District Court for further proceedings consistent with this Opinion.

/S/ PATRICIA COTTER

23

We concur:

/S/ MIKE McGRATH
/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS


Justice Jim Rice, dissenting.

¶50    I dissent.   Respectfully, I believe this decision will bring confusion to the determination of an insurer's duty to defend, an area of the law which is now clear.  I begin with a discussion of the Court's Opinion to point out what are, in my view, flaws in the reasoning and adverse consequences of the new rules.  I end by proposing a means to resolve cases such as this one which adheres to the clear precedent we have provided since *Staples*.

¶51    The Court holds that when a filed complaint does <u>not</u> present a claim covered by an insurance policy, the insurer must nonetheless defend if it has other "information that could give rise" to a duty to defend and indemnify.  *Opinion*, ¶ 30.  The Court further explains that:

> This does not require an insurer to seek out such information—as we have previously held, insurers that look at facts beyond the allegations in the complaint do so at their own risk as they will be required to defend and/or indemnify based on the information discovered. *Farmers Union Mut. Ins. Co. v. Staples*, 2004 MT 108, 321 Mont. 99, 90 P.3d 381.

¶52    However, the Court's position that it is "not requir[ing] an insurer to seek out such information" is not plausible.   Insurers *must* seek out information to fulfill their

24

obligation under the Unfair Trade Practices Act to conduct a reasonable investigation. *See* § 33-18-201(4), MCA (insurers may not "refuse to pay claims without conducting a reasonable investigation"); *Lorang v. Fortis Ins. Co.*, 2008 MT 252, ¶ 86, 345 Mont. 12, 192 P.3d 186 ("As we have previously observed, the UTPA is designed to protect claimants against insurers who would deny a claim without first conducting a reasonable investigation."). In *Shilhanek v. D-2 Trucking, Inc.*, 2003 MT 122, ¶ 37, 315 Mont. 519, 70 P.3d 721, we reversed a summary judgment entered in favor of an insurer on a claim of failing to reasonably investigate under § 33-18-201(4), MCA, on the simple ground the insurer was alleged to have failed to obtain a police report about the subject accident. Insurers have an obligation to seek out information, and I believe this decision will add confusion to the law by stating they do not. Further, the Court's statement that insurers will be required "to defend and/or indemnify based on the information discovered" outside the complaint could likewise create a strange incentive for insurers to avoid knowledge of the facts—one which would be inconsistent with the requirements of the UTPA.

¶53 *Staples* was an important holding in which we took pains to clarify that an insurer's duty to defend was based upon the pleadings, and we have since consistently followed that decision. I believe the Opinion's survey of thirty years of cases and the classification into three scenarios overlooks the corrective course we chartered in *Staples*. We provided clear rules, explaining that "[t]he insurance company must look to the allegations of a complaint to determine if coverage exists under an insurance policy, thus giving rise to the insurer's duty to defend" and that "[t]he duty to defend arises when a

25

complaint against an insured alleges facts, which if proven, would result in coverage." *Staples*, ¶¶ 20-21 (citations omitted). We further instructed that "[t]he insurer is under a duty to construe the factual assertions from the perspective of the insured rather than solely from the insurer's own perspective," that "a court must liberally construe allegations in a complaint so that all doubts about the meaning of the allegations are resolved in favor of finding that the obligation to defend was activated," and that "[u]nless there exists an unequivocal demonstration that the claim against an insured does not fall within the insurance policy's coverage, an insurer has a duty to defend." *Staples*, ¶ 22. By my count, in the five years since *Staples* was decided, it has been cited in our cases for these principles 16 times. The three case scenarios offered by the Court, and on which it bases its decision, have not occurred since *Staples*, most notably *Burns* and *Strecker*, which *excused* insurers from the duty to defend on the basis of information outside the complaint. It is this approach about which we cautioned in *Staples*, holding that such a strategy is pursued at the insurer's risk. The Court uses *Burns* and *Strecker* as the reason a new corresponding rule must be created requiring insurers to *accept* the duty to defend on the basis of outside information. *See Opinion*, ¶ 30 ("We conclude this same analysis should be utilized when the complaint does *not* present a claim which on its face is covered by the policy, but the insurer nonetheless has information which could give rise to a duty to defend . . . ."). However, this is a "straw man" analysis. *Staples* has relegated *Burns* and *Strecker* to the ash heap. As noted by counsel during oral arguments, no longer will insurers look outside the complaint to deny coverage, as *Staples* has made it entirely too risky to do so.

26

¶54    The Court purports to distinguish *Staples* on the ground that *Staples* involved a disputed fact (the ownership of the horse), whereas the critical fact here (Manchester's involvement) was undisputed. *See Opinion*, ¶ 32. With all respect, I believe the Court does a disservice by uprooting established rules governing the insurer's duty to defend based upon whether or not facts in a particular case are disputed. Disputed facts are to be resolved in favor of coverage, but that is not the question. The question is to what source an insurer should look to determine whether a claim asserted against the insured comes under the policy's coverage. I submit that source should be the pleadings.

¶55    Beyond our precedent for that rule, this is common sense. Pleadings contain the actual claims brought against the insured. Communications, reports, investigations, other extra-litigation materials—even discovery—do not. A claimant can only obtain judgment against the insured for what is claimed in the pleadings. An insurer may be aware, from its investigation, of many facts which could support various claims against the insured. However, if those claims are not actually brought, why should the insurer be required to defend against them? Although the Court here is concerned that a complaint is drafted by the claimant, over whom the insured has no control, *see Opinion*, ¶ 39, this is the inherent nature of all litigation. A claimant is entitled to draft his own complaint, and he may or may not draft it in a manner that triggers coverage. That reality should not dictate the rules governing an insurer's duty to defend. As the Court notes, we have long understood that "if the alleged facts fail to bring the case within the policy coverage, the insurer is free of such obligation [to defend], *at least initially*. Stated differently, the insurer is under an obligation to defend only if it could be held bound to indemnify the

27

insured, assuming that the injured person proved the allegations of the complaint, regardless of the actual outcome of the case." *McAlear*, 158 Mont. at 457, 493 P.2d at 334 (emphasis added). Here, consistent with *McAlear*, St. Paul was *initially* free of the obligation to defend because the complaint did not assert a claim based upon Manchester's involvement.

¶56 The Court's determination to create new rules is driven by the apparent inequity it sees in St. Paul having "actual knowledge of the facts" giving rise to coverage, but which were not pled in the complaint. *Opinion*, ¶ 27. The solution I would offer for that problem is below, but I would first note that the Court's approach creates for every case a "what did they know and when did they know it" inquiry to determine the insurer's duty to defend, essentially requiring an insurer to defend every case until it obtains a judgment to the contrary in a separate declaratory action. This is evident by the Court's distinguishing of our decision in *Rumph*. The Court reasons that "unlike in *Rumph*, St. Paul undeniably had knowledge of Manchester's responsibility for Phillips' damage *before* Phillips' Complaint was ever filed . . . ." *Opinion*, ¶ 38 (emphasis in original). Abandoning the certainty of the rules we crafted in *Staples* in favor of such factual hairsplitting, inevitably spurring additional litigation, should give us pause.

¶57 I believe there is a solution for cases such as this which would continue to honor our recent precedent. First, I would retain our rules governing the duty to defend, stated best in *Staples*, clarifying only that an insurer must initially decide its duty to defend from the *pleadings*—construed, as we have held, in favor of the insured. *Staples* commonly referred to the "complaint," but claims can also rise in later pleadings, such as here,

where the Manchester claim arose in a third party complaint. After the initial complaint, if further pleadings are filed, these also must be submitted to the insurer to determine whether it has a duty to defend thereunder. This would constitute the "initial" determination. *McAlear*, 158 Mont. at 457, 493 P.2d at 334. Then, if either side wants the coverage question to be determined by a court on the basis of information outside the pleadings—either the insured, who wants to establish coverage by additional information, or the insurer, who wants the absence of coverage declared by additional information—they can initiate a separate declaratory action to do so, and a court can decide the coverage question based upon the discovery conducted in that action. This was the very approach pursued in *Rumph*, a post-*Staples* case.

¶58 In this case, it is undisputed that St. Paul did know of *facts* that could trigger coverage with regard to Manchester's involvement. However, conspicuously absent from the Court's opinion is any indication that St. Paul was advised or informed that a *claim* alleging Manchester's involvement had been filed in any *pleading* in the lawsuit. In oral argument, St. Paul stated they were never advised of the third party complaint which Revelation had filed against Manchester. I assume the Court has chosen to be silent on the issue because, without notification that a claim involving Manchester had been pled, a duty to defend by St. Paul would not have arisen under our recent jurisprudence. Because Revelation did not establish that it notified St. Paul that a *pleading* alleging Manchester's involvement was filed in the underlying lawsuit, which Revelation litigated to a conclusion, Revelation should not be allowed to escape what has been our recently clear rule, that the duty to defend is triggered by the pleadings. Instead, the Court is

holding St. Paul responsible for failing to anticipate that this Court would deviate from our recently clear jurisprudence.

¶59    I would affirm.


/S/ JIM RICE