# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STILLWATER MINING COMPANY, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. N20C-04-190 AML CCLD |
| v. | ) | CONSOLIDATED |
| | ) | |
| NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., ACE AMERICAN INSURANCE COMPANY, QBE INSURANCE CORPORATION, | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

**Submitted: September 1, 2021**
**Decided: December 22, 2021**

## <u>MEMORANDUM OPINION</u>

## Upon Defendants' Motions to Dismiss: GRANTED.

David J. Baldwin, Esquire, Peter C. McGivney, Esquire, and Cheneise V. Wright, Esquire of BERGER HARRIS LLP, Wilmington, Delaware, Peter Gillon, Esquire, Tamara Bruno, Esquire, and Brendan Hogan, Esquire of PILLSBURY WINTHROP SHAW PITTMAN LLP, Washington, D.C., Attorneys for Plaintiff Stillwater Mining Company.

Kurt M. Heyman, Esquire, and Aaron M. Nelson, Esquire of HEYMAN ENERIO GATTUSO & HIRZEL LLP, Wilmington, Delaware, Scott B. Schreiber, Esquire, William C. Perdue, Esquire, and Andrew T. Tutt, Esquire of ARNOLD & PORTER KAYE SCHOLER LLP, Washington, D.C., Attorneys for Defendant National Union Fire Insurance Company of Pittsburg, PA.

John C. Phillips Jr., Esquire, and David A. Bilson, Esquire of PHILLIPS, MCLAUGHLIN & HALL, P.A., Wilmington Delaware, Geoffrey W. Heineman, Esquire, Jung H. Park, Esquire, and John J. Iacobucci Jr., Esquire of ROPERS MAJESKI, PC, New York, New York, Attorneys for Defendant QBE Insurance Corporation.

Gregory F. Fischer, Esquire of COZEN O'CONNOR, Wilmington, Delaware, Angelo G. Savino, Esquire, of COZEN O'CONNOR, New York, New York, Attorneys for Defendant ACE American Insurance Company.

**LEGROW, J.**

Seizing on a decision of this Court holding that the definition of "securities claim" in an insurance agreement included a stock appraisal action, the plaintiff in this case filed claims seeking coverage from its D&O carriers for attorneys' fees, costs, and an interest award incurred in connection with an appraisal proceeding filed against the plaintiff in the Delaware Court of Chancery. In its initial complaint, the plaintiff averred that Delaware law governed the policy at issue. This coverage action was stayed while the original case regarding the definition of "securities claim" was appealed to the Delaware Supreme Court. When the Supreme Court held that an appraisal action was not "for a violation of law" and therefore did not meet the policy's definition of "securities claim," the plaintiff in this action found itself without a coverage claim under Delaware law. Rather than admit defeat, however, the plaintiff pivoted and unabashedly took the new position that Montana law, rather than Delaware law, in fact governed the policy.

Arguably, the plaintiff is bound by its previous representations to this Court. But even if it is not, binding Delaware precedent and the applicable factors under the *Restatement's* conflict of laws test compel the conclusion that Delaware law governs the policies at issue. As a result, the plaintiff's coverage claim is barred by Delaware law. Notwithstanding the plaintiff's serial procedural efforts to avoid this decision, the time has come for the plaintiff's coverage claims to be dismissed with prejudice.

**FACTUAL AND PROCEDURAL HISTORY**

The following facts are drawn from the Plaintiff's Amended Complaint and the record in this matter and are assumed true for purposes of the pending motion.

**A. Parties**

Plaintiff Stillwater Mining Company ("Stillwater") is a mining company incorporated under Delaware law with its principal place of business in Stillwater County, Montana.[1] Stillwater is the largest hard rock mining operation in Montana, contributing over $1.5 billion to Montana's gross domestic product annually.[2] Stillwater is the only primary producer of platinum and palladium in the United States.[3] These minerals are essential to the production of catalytic converters, a necessary component for automobiles produced in the United States, and the minerals also have significant medical and industrial applications outside the automobile industry.[4] Stillwater was traded publicly from 1994 until 2017, when it was acquired by and merged into (the "Merger") Sibanye Gold Limited ("Sibanye"),

---

[1] Plf.'s Mot. to Dismiss without Prejudice (hereinafter "Plf.'s Mot. to Dismiss") ¶ 1. Stillwater is a wholly-owned subsidiary of Sibanye-Stillwater Limited, a South African corporation with its principal place of business in South Africa.

[2] *Id*.

[3] Plf.'s Initial Compl. ¶ 21.

[4] *Id*. Plaintiff alleges platinum and palladium are on the Department of Interior's list of "critical minerals." *Id*.

a South African mining company.[5]  Stillwater then became a private, wholly-owned subsidiary of Sibanye.[6]

Relevant to the case before the Court, Stillwater purchased directors' and officers' liability insurance policies (collectively, the "D&O Policies") to cover risks associated with its management and governance, including claims by securities holders.  The D&O Policies were issued by a series of insurers: Defendants National Union Fire Insurance Company ("National Union"), ACE American Insurance Company ("ACE"), QBE Insurance Company ("QBE"), AXIS Insurance Company, Berkley Insurance Company, Navigators Insurance Company and Continental Casualty Company.[7]  National Union issued Stillwater the primary directors' and officers' insurance policy (the "Primary Policy"), and two excess policies were issued by ACE and QBE (the "Excess Policies").[8]

## B. The D&O Policies

Stillwater initiated this action seeking coverage under the Primary Policy, which provides that the Insurers "shall pay the **Loss** of [Stillwater] . . . arising from

---

[5] *Id.* ¶ 23.

[6] *Id.*

[7] Plf.'s Mot. to Dismiss ¶ 2. National Union, ACE, QBE, AXIS Insurance Company, Berkley Insurance Company, Navigators Insurance Company and Continental Casualty Company all were parties to Stillwater's Initial Complaint.  *See* Plf.'s Initial Compl.  When Stillwater filed its Amended Complaint, it removed all defendants to this action except National Union, ACE, and QBE.  This opinion will therefore refer to National Union, ACE, and QBE collectively as the "Insurers."

[8] Def.'s Mot. in Resp. to Plf.'s Mot. to Dismiss (hereinafter, "Def.'s Mot. in Resp.")  at 3.

any **Securities Claim**."[9]  "**Loss**" includes defense costs and "pre/post-judgment interest on a covered judgment."[10]  "**Securities Claim**" is defined, in relevant part, as "a Claim . . . alleging a violation of any law, rule or regulation, whether statutory or common law."[11]  The D&O Policies cover Securities Claims against Stillwater "for any Wrongful Act of [Stillwater]," which the D&O Policies define as "any actual or alleged breach of duty, neglect, error, misstatement, misleading statement, omission or act by [Stillwater], but solely in regard to a Securities Claim."[12]  The Primary Policy also contains an alternative dispute resolution provision, requiring "the mediator or arbitrators [to] give due consideration to the general principles of the law of the state where [Stillwater] is incorporated."[13]

The Excess Policies are follow-form policies that incorporate the Primary Policy's terms and conditions unless stated otherwise.[14]  Collectively, the D&O Policies formed a tower of insurance that provided directors' and officers' liability coverage for claims made during the policy period from May 1, 2016, to August 1, 2017.[15]

---

[9] *Id*., Ex. A at Section 1.C.
[10] *Id*., Ex. A at Section 13.
[11] *Id*., Ex. A at Endorsement #12.
[12] Plf.'s Initial Compl. ¶ 3.
[13] Def.'s Mot. in Resp., Ex. A at Endorsement #4.  Stillwater is incorporated in Delaware.
[14] *Id*., Exs. B, C.
[15] Plf.'s Initial Compl. ¶ 47.

## C. The Appraisal Action

The action originated to determine whether the D&O Policies afforded Stillwater coverage for defense costs incurred and interest payments made in connection with an appraisal action filed against Stillwater under 8 *Del. C.* § 262 (the "Appraisal Action").[16] The Appraisal Action arose out of the Merger in which Stillwater was acquired by and merged into Sibanye.[17] During that transaction, Sibanye acquired all shares of Stillwater stock for $18.00 per share.[18]

On or about April 20, 2017, Stillwater received appraisal demands from certain stockholders ("Petitioners") demanding appraisal of their shares under 8 *Del. C.* § 262.[19] Those Petitioners filed appraisal actions in Delaware Court of Chancery on May 14, 2017, seeking (i) a determination of the fair value of their shares; and (ii) an order that Stillwater, as the surviving corporation, pay that fair value, together with statutory interest.[20] After trial, the Court of Chancery found that Petitioners had failed to demonstrate a flawed and biased sale process in connection

---

[16] Def.'s Mot. in Resp. at 4.

[17] *Id*. *See In re Stillwater Mining Co*., 2019 WL 3943851, at *1 (Del. Ch. 2019), *aff'd,* 240 A.3d 3 (Del. 2020).

[18] *In re Stillwater Mining Co*., 2019 WL 3943851, at *1 (Del. Ch. 2019). The Court of Chancery concluded in the Appraisal Action that the fair value was $18.00 per share, equal to the deal price. The Delaware Supreme Court affirmed. *See Brigade Leveraged Cap. Structure Fund Ltd. v. Stillwater Mining Co*., 240 A.3d 3, 4 (Del. 2020).

[19] Plf.'s Initial Compl. ¶¶ 25, 28.

[20] *Id*. ¶ 26. That Appraisal Action is captioned: *In re Appraisal of Stillwater Mining Company*, C.A. No. 2017-0385-JTL. The Petitioners alleged the merger price was inadequate because Stillwater's Board and CEO breached their duties to obtain fair value. *See id.* ¶ 29. Petitioners claimed, but for these breaches, they would have received $25.91 per share, more than 40% over the agreed merger price. *Id*. The Delaware Supreme Court issued two important rulings within the

5

with the Merger, and entered Post-Trial Judgment ordering Stillwater to pay: (i) $18.00 per share less the prepayment amount of $14.68 per share, for a payment of $3.32 per share; and (ii) the Interest Award reflecting the statutory interest rate on the unpaid value of the shares from May 4, 2017 to September 30, 2019.[21] Stillwater paid the Interest Award in the amount of $3,472,920.99 to the Petitioners while Petitioners appealed the judgment on October 8, 2019.[22] Stillwater alleges it incurred more than $20 million in attorneys' fees and other costs defending the Appraisal Action and the appeal.[23] In October 2020, the Delaware Supreme Court affirmed the Court of Chancery's judgment.[24]

---

first few months of the Appraisal Action, which heightened Petitioners' burden of proof in appraisal proceedings: *DFC Glob. Corp. v. Muirfield Value Partners, L.P*., 172 A.3d 346 (Del. 2017) and *In re Appraisal of Dell Inc*., 177 A.3d 1 (Del. 2017). *Id.* ¶ 30. These decisions effectively require Delaware appraisal petitioners demonstrate deficiencies in the sale process to overcome the presumption that the negotiated deal price is a reliable measure of "fair value." *Id*. Applying these standards, Vice Chancellor Laster ultimately ruled in Stillwater's favor, holding that (i) the enhanced scrutiny standard was satisfied; (ii) the Petitioners failed to demonstrate a flawed and biased sale process; and (iii) the deal price reflected the fair value of the Petitioner's shares. *Id*. ¶ 41. But the Court also held that, pursuant to the statutory interest provisions in 8 *Del. C*. § 262, Petitioners were entitled to statutory interest on the appraised fair value of their shares occurring "at the statutory rate, compounded quarterly, from the Transaction Date until the date of payment." *Id*. ¶ 42. That effective interest rate imposed totaled 7.921%. *Id*.

[21] *Id*. ¶ 43.

[22] *Id*. ¶ 45.

[23] *Id*. ¶ 46. Specifically, Stillwater alleges between the Settlement Interest Payment, Statutory Interest Payment, and the Interest Award, it paid a total of $11.5 million in statutory interest.

[24] *Brigade Leveraged Capital Structures Fund. Ltd. v. Stillwater Mining Co*., 240 A.3d 3 (Del. Oct. 12, 2020).

## D. The Insurers Deny Coverage for Stillwater's Appraisal Action

Stillwater notified the Insurers of the appraisal demands on or about April 25, 2017; the Insurers did not accept coverage for the demands.[25]  On or about June 1, 2017, National Union advised Stillwater it would be issuing a disclaimer letter in response to the notice of appraisal demands.[26]  Stillwater officially received National Union's notice that the Appraisal Action was not covered on or about November 12, 2019.  National Union denied coverage because

> "[t]he Appraisal Action is not a Claim alleging a violation of any law, rule or regulation and as such does not assert a Securities Claim.  The Petitioners sought a judicial determination of the fair value of their shares… Moreover, the Appraisal Action did not allege a Wrongful Act.  Again, the Petitioner sought a judicial determination as to the fair value of their shares."[27]

## E. The Parties' Initial Filings in this Court

Stillwater, National Union, and ACE attempted to mediate their coverage dispute, but were unsuccessful.[28]  On April 13, 2020, National Union filed a declaratory judgment action against Stillwater in this Court, seeking a declaration that the Primary Policy does "not provide insurance coverage for defense expenses and statutory interest resulting from an 'appraisal' suit."[29]  On April 22, 2020, Stillwater filed its own complaint against the Insurers seeking coverage for defense

---

[25] Plf.'s Initial Compl. ¶¶ 61, 62.
[26] *Id.* ¶ 63.
[27] *Id.* ¶ 66.
[28] *Id.* ¶ 70.
[29] Def.'s Mot. in Resp. at 4-5.  *See also* Trans. ID 65574653, ¶ 1.

costs, settlement interest payments, and statutory interest resulting from the Appraisal Action.[30] Specifically, Stillwater brought claims for (i) declaratory judgment that the Insurers had a duty to indemnify Stillwater for the Settlement Interest Payment, the Statutory Interest Payment, and the Interest Award; (ii) breach of contract or anticipatory breach of contract regarding indemnification for the Settlement Interest Payment, the Statutory Interest Payment, and the Interest Award; (iii) declaratory judgment regarding the Insurers' duty to pay defense costs in the Appraisal Action; and (iv) breach of contract or anticipatory breach of contract regarding payment of defense costs.[31]

Stillwater alleged it paid substantial premiums for the D&O Policies to protect against the potential risk of losses from lawsuits brought by its security holders, or purchasers or sellers of its securities.[32] According to Stillwater, the D&O Policies provide coverage under a definition of "Securities Claim" amended by endorsement from the standard version to broadly include *any* lawsuit against Stillwater "alleging a violation of any law, rule or regulation, whether statutory or common law . . brought by a security holder or purchaser or seller of securities of [Stillwater] with respect to such security holder's purchaser's or seller's interest in securities of [Stillwater]."[33]

---

[30] Def.'s Mot. in Resp. at 5. *See also* Plf.'s Initial Compl. ¶¶ 1, 79, 84, 89.
[31] Plf.'s Initial Compl. ¶¶ 76-99.
[32] *Id.* ¶ 2.
[33] *Id.*

Stillwater contended the Appraisal Action was exactly that - a claim brought by stockholders alleging Stillwater violated Delaware law by negotiating and entering into the Merger for inadequate consideration based on an improper sale process, and seeking damages in the form of the fair value of their shares.[34] Stillwater averred the Insurers wrongfully refused to provide coverage on grounds that the Appraisal Action did not allege a "violation" of any law or a "Wrongful Act" because petitioners "sought a judicial determination of the fair value of their shares."[35] Stillwater further argued it "has therefore been forced to commence this action to enforce its insurance coverage rights."[36]

The Insurers initiated this action after this Court issued its decision in *Solera I*[37] and while that decision was being appealed to the Delaware Supreme Court. In *Solera I*, this Court held an appraisal claim alleged a violation of law and therefore fell within the subject insurance policy's definition of a "securities claim."[38] Seizing on this ruling, Stillwater alleged in its initial complaint that Delaware law governed the D&O Policies and specifically averred that (i) Delaware law applied to the principles of contract interpretation at issue in the proceeding; and (ii) Delaware has

---

[34] *Id.* ¶ 4.
[35] *Id.* ¶ 5. Such denial was in error, the complaint further alleges, because it is "inconsistent with Delaware law." *Id.* ¶ 6.
[36] *Id.* ¶ 7.
[37] *Solera Holdings, Inc. v. XL Specialty Ins. Co.*, 213 A.3d 1249 (Del. Super. Ct. 2019) (hereinafter, *Solera I*).
[38] *Id.*

a strong state interest in the application of its principles of corporate law and governance in construing the D&O liability insurance policies at issue in this matter.[39]

Stillwater answered National Union's complaint in the declaratory judgment action on June 12, 2020, and simultaneously filed a motion for judgment on the pleadings.[40] The parties attended a teleconference with this Court regarding the motion for judgment on the pleadings on June 25, 2020.[41] The Court then stayed briefing on Stillwater's motion until after the Delaware Supreme Court issued its decision in the *Solera I* appeal because Stillwater's coverage claim turned in large part on that case.[42]

On August 6, 2020, the Court consolidated National Union's declaratory judgment action with Stillwater's coverage action due to the "common question of law and fact, the similarities of the claims and defenses[,] and to avoid unnecessary costs or delay" in accordance with the parties' stipulation.[43] The Court also "realigned" the parties so that Stillwater, the natural plaintiff, would be the plaintiff in the consolidated case.[44] On August 19, 2020, National Union, ACE, and QBE each answered Stillwater's initial complaint, and ACE and QBE asserted

---

[39] Plf.'s Initial Compl. ¶ 9.
[40] Trans. IDs 65695725, 65696953.
[41] Trans. ID 65724209.
[42] Def.'s Mot. in Resp. 5-6.
[43] D.I. 35, at 3.
[44] D.I. 35.

counterclaims seeking declaratory judgment that the Excess Policies afforded no coverage for the Appraisal Action.[45]  Stillwater answered ACE and QBE's counterclaims on September 14, 2020.[46]

## F. The Delaware Supreme Court Issues *Solera II*

The Delaware Supreme Court resolved the *Solera* appeal on October 23, 2020, in a decision captioned *In re Solera Ins. Coverage Appeals* ("*Solera II*").[47]  That case held that an appraisal action under Delaware law is not a claim "for a violation of law" and therefore not a "securities claim" under the policy at issue in that case.[48] In light of *Solera II*, this Court directed the parties to confer and provide a status update to determine how this litigation should proceed.[49]  In November 2020, Stillwater informed the Insurers and the Court that it had decided to move for leave to file an amended complaint.[50]  On December 21, 2020, Stillwater formally filed a motion to dismiss the action without prejudice or, in the alternative, a motion for leave to file an amended complaint.[51] On the same day, Stillwater commenced an

---

[45] D.I. 39; D.I. 40; D.I. 41; D.I. 42; D.I. 44; D.I. 45.
[46] D.I. 47; D.I. 48.
[47] *In re Solera Ins. Coverage Appeals*, 240 A.3d 1121 (Del. 2020) (hereinafter, "*Solera II*").
[48] *Id*. at 1131.  The Court explained that "the term 'violation' suggests an element of wrongdoing" and relied on "an unbroken line of cases that hold that an appraisal under section 262 does not involve any inquiry into claims of wrongdoing."  *Id*. at 1132-33, 1136 (internal quotations omitted).  The effect of *Solera II* for Stillwater is that the Delaware Appraisal Action is not a "securities claim" and the defense costs, settlement interests' payments, and statutory interest that Stillwater seeks therefore are not covered under the Insurers' policies.
[49] D.I. 54.
[50] D.I. 57.
[51] D.I. 62.

action in Montana against the Insurers, seeking damages for their alleged breach of their defense obligations under Montana law.[52]

## G. Stillwater's Motion to Dismiss without Prejudice

Stillwater first sought to dismiss this action without prejudice so Stillwater could pursue Montana-specific claims to the Montana court.[53] Stillwater claimed dismissal was proper because there had been "minimal efforts on the part of the Insurers" who "ha[d] not prepared for trial."[54] Stillwater argued, in the alternative, that the Court should grant Stillwater leave to amend its complaint because "[t]here has been no bad faith, delay, or dilatory practice on Stillwater's part."[55] Stillwater contended none of the Insurers could claim prejudice because they only had filed answers to the original complaint and no discovery of any kind had taken place.[56] The Insurers opposed Stillwater's motion to dismiss, arguing it was improper procedurally and would result in piecemeal litigation because ACE and QBE's counterclaims would not be dismissed.[57] The Insurers did not oppose Stillwater's

---

[52] Plf.'s Mot. to Dismiss ¶ 11.
[53] *Id*. ¶ 9.
[54] *Id*. ¶ 12.
[55] *Id*. ¶ 15. Stillwater contended that it (i) maintained regular contact with the Insurers and with the Court while it considered its options and (ii) dismissed four Defendants as to which Stillwater no longer was asserting a claim for the proposition Stillwater has not conducted its actions in "bad faith" or with "delay." *Id*.
[56] *Id*. ¶ 16.
[57] D.I. 66 at 2.

alternative request to amend its complaint to add claims under Montana law, though the Insurers reserved their right to seek dismissal of the amended complaint.[58]

On April 26, 2021, the Court denied Stillwater's motion to dismiss and granted its motion for leave to file an amended complaint.[59] In its amended complaint, filed on May 11, 2021, Stillwater did not assert any claims against AXIS Insurance Company, Berkley Insurance Company, Navigators Insurance Company, and Continental Casualty Insurance Company, leaving National Union, ACE, and QBE as the remaining defendants.[60] Stillwater revised its complaint, alleging it sought declaratory judgment and damages resulting from the Insures' failure to fulfill their defense obligations under the D&O Policies in connection with the Appraisal Action.[61] Stillwater also sought damages for improper claims handling under the Montana Unfair Trade Practices Act (the "UTPA").[62]

---

[58] D.I. 66 at 3, 19.

[59] D.I. 76. Specifically, the Court held that Stillwater "voluntarily filed this action in Delaware. [Stillwater] maintained for all the time until very recently… that Delaware law governed the dispute. There's really been no argument to [the Court] that [Delaware] is an inconvenient place for [Stillwater] to litigate this case." *Id*. Tr. 50: 15-22. Also, the Court warned that "...frankly, the decision to dismiss now after an adverse ruling stemming from the Delaware Supreme Court in *Solera* does take on a flavor of forum shopping. That's not something that this Court typically allows, certainly tries to avoid, and [the Court] do[esn't] allow the use of Rule 41(a) to promote forum shopping." *Id*. at 51: 15-22.

[60] D.I.79.

[61] Plf.'s Am. Compl ¶ 8.

[62] *Id*.

National Union and QBE filed a motion to dismiss Stillwater's Amended Complaint on May 25, 2021, with ACE filing its separate motion on the same day (collectively, the "Motions to Dismiss").[63]

## H. The Court Denies Stillwater's Motion to Stay Proceedings

After the parties briefed and argued the Insurers' Motions to Dismiss, and while the matter was under advisement with the Court, Stillwater filed a motion to stay proceedings in this Court pending a decision by the Montana court on (i) the Insurers' motions to stay or dismiss the Montana action (converted to summary judgment), and on (ii) Stillwater's cross-motion for partial summary judgment in Montana on breach of the duty to defend.[64] Stillwater averred that whether a denial of tender breached the Insurers' duty to defend under Montana law should be decided in the Montana court action.[65] Stillwater contended the Montana Action "involve[s] Montana claims brought by a Montana plaintiff under a contract for insurance made in Montana, to be performed in Montana and conformed to Montana law, which was sold to Stillwater in Montana by defendants authorized to sell and adjust insurance in Montana, who advised Stillwater why its tender was denied by letter sent to Stillwater's Vice President of Legal Affairs in Montana, where Stillwater's mines, smelter and workforce are located."[66]

---

[63] D.I. 82; D.I. 83.
[64] Plf.'s Mot. to Stay Proceedings (hereinafter, "Plf.'s Mot. to Stay") at 2.
[65] *Id*. at 3.
[66] *Id*. at 2-3; Plf.'s Resp. to Mot. to Dismiss at 26.

On November 3, 2021, Defendants National Union and QBE filed their opposition to Stillwater's motion to stay.[67] Those parties contended (i) the motion was untimely; (ii) the motion was Stillwater's second attempt to forum shop; and (iii) Stillwater failed to meet its burden in demonstrating that the case was the rare dispute in which litigating in Delaware would result in overwhelming hardship, warranting a relief of stay under *General Foods Corp. v. Cryo-Maid, Inc.*[68] This Court ruled in the Insurers' favor and denied the motion to stay proceedings.[69]

## I. Parties' Contentions

In its Amended Complaint, Stillwater seeks declaratory judgment and damages for its defense in the Appraisal Action.[70] Stillwater also seeks damages under the Montana Unfair Trade Practices Act for the Insurers' improper claims handling.[71] National Union and QBE argue the amended complaint should be dismissed because Delaware law, not Montana law, governs the coverage demand, and that, as Stillwater conceded in oral argument, *Solera II* bars Stillwater's coverage claim under Delaware law.[72] National Union and QBE also allege Stillwater has no viable claim, even if Montana law applies, because the Insurers never had a duty to defend

---

[67] D.I. 101.
[68] 198 A.2d 681, 684 (Del. 1964).
[69] D.I. 103. The Court held Stillwater's motion was untimely and, in any event, the *Cyro-Maid* factors did not favor a stay.
[70] Plf.'s Am. Compl. ¶ 1.
[71] *Id.* ¶ 8.
[72] National Union and QBE's Mot. to Dismiss Plf.'s Am. Compl. at 1-2.

15

or advance Stillwater's defense costs under their policies.[73] ACE filed its own motion to dismiss, contending that regardless of which state's law applies to the interpretation of the insurance policies, the Delaware Supreme Court has foreclosed coverage for the Appraisal Action due to its decision of in *Solera II*.[74]

This Court's decision as to whether Delaware or Montana law applies is dispositive to the case. If Delaware law applies, and I conclude it does, the Delaware Supreme Court's *Solera II* decision bars Stillwater from receiving coverage for the Appraisal Action, effectively deciding the instant action. My reasoning follows.

## ANALYSIS

A party may move to dismiss under this Court's Civil Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[75] In deciding a Rule 12(b)(6) motion, this Court (i) accepts as true all well-pleaded factual allegations in the complaint; (ii) credits vague allegations if they give the opposing party notice of the claim; (iii) draws all reasonable factual inferences in favor of the non-movant; and (iv) denies dismissal if recovery on the claim is reasonably conceivable.[76] The Court, however, need not "accept conclusory allegations unsupported by specific

---

[73] *Id*. at 2.

[74] *Solera II,* 240 A.3d 1121 (Del. 2020). ACE contends the Delaware Supreme Court has held that an appraisal action is not for a violation of law, and therefore, not a Securities Claim as a matter of law. This holding, according to ACE, moots Stillwater's argument. *See* ACE Ins. Company's Op. Brief in Supp. of its Mot. to Dismiss, at 1.

[75] Del. Super. Ct. Civ. R. 12(b)(6).

[76] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 27 A.3d 531, 535 (Del. 2011).

facts or . . . draw unreasonable inferences in favor of the non-moving party."[77]  The

Court need not credit "every strained interpretation of the allegations proposed by

the plaintiff."[78]

**A. Delaware law applies to the current litigation because Delaware is the state with the "most significant relationship" to the parties.**

When considering the Insurers' motions to dismiss Stillwater's amended

complaint, this Court first must determine which state's law governs the claims

brought against them.[79]  The Court begins this task by using a two-step, conflict of

law framework: (i) the Court first determines whether an actual conflict between the

states' laws exists and, if so, (ii) the Court next decides which state has the "most

significant relationship" to the present case.[80]  Delaware has adopted the "most

significant relationship" test from the *Restatement (Second) of Conflict of Laws*[81] for

choice of law disputes.[82]  For the reasons discussed below, Delaware law applies to

Stillwater's coverage claims because (i) an actual conflict between Delaware and

Montana law exists, and (ii) Stillwater's contacts with Delaware deem that state to

have the "most significant relationship" to the D&O Policies.

---

[77] *Price v. E.I. DuPont de Nemours & Co.*, 26 A.3d 162, 166 (Del. 2011), overruled on other grounds by *Ramsey v. Ga. S. Univ. Advanced Dev. Ctr.*, 189 A.3d 1255, 1277 (Del. 2018).
[78] *Malpiede v. Towson*, 780 A.2d 1075, 1083 (Del. 2001).
[79] *KT4 Partners LLC v. Palantir Technologies Inc.*, 2021 WL 2823567, at *12 (Del. Super. Ct. June 24, 2021).
[80] *Id*.
[81] RESTATEMENT (SECOND) OF CONFLICT OF LAWS (1971) (hereinafter, "*Second Restatement*").
[82] *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 459 (Del. 2017).

**1. The Court assumes for its choice-of-law analysis an actual conflict exists between the laws of Delaware and Montana for the duty to defend.**

The first step for a Delaware choice-of-law analysis is to decide if an actual conflict between the states' laws exists.[83] If no conflict is found, no choice-of-law analysis needs to be applied.[84] Here, Stillwater contends Delaware and Montana law are in conflict. Stillwater alleges Montana law broadly defines an insurer's duty to defend, requiring an "unequivocal demonstration" of non-coverage when refusing to defend.[85] Stillwater relies on *Farmers Union Mutual Insurance Co. v. Staples* for this proposition.[86] The *Staples* Court held that if a dispute exists as to the facts relevant to coverage, those factual disputes "*must* be resolved in favor of coverage."[87] Stillwater also alleges Montana law precludes an insurer from later raising *any* coverage defenses if it fails to provide this unequivocal demonstration.[88]

The Insurers dispute that Montana and Delaware law materially differ regarding the scope of the duty to defend.[89] Specifically, the Insurers argue

---

[83] *KT4 Partners LLC,* 2021 WL 2823567, at *12.
[84] *Id.*
[85] Plf.'s Am. Compl. ¶ 74 (citing *Farmers Union Mut. Ins. Co. v. Staples.,* 90 P.3d 381, 386 (Mt. 2004) for the proposition that "[u]nless there exists an unequivocal demonstration that the claim against the insured does not fall within the policy coverage, the insurer has a duty to defend.") (internal citations omitted)).
[86] *Farmers Union Mut. Ins. Co. v. Staples,* 90 P.3d 381, 386 (Mt. 2004).
[87] *Id.* (emphasis added).
[88] Plf.'s Am. Compl. ¶ 77 (emphasis added).
[89] Def. National Union's and QBE's Reply Br. in Supp. of its Mot. to Dismiss (hereinafter, "Def. National Union and QBE's Reply Br.") at 7. The Insurers contend that both Montana and Delaware law provide the same rights to insureds. ("Even if Montana's public policy were relevant, Montana law in fact provides the same rights to insureds as Delaware law does.") *Id.*

Montana's advancement standard is not a lower standard than Delaware's,[90] and that Stillwater's reliance on selected caselaw for its "unequivocal demonstration" argument is improperly placed.[91]  But Stillwater has advanced at least a plausible argument that Montana law imposes on an insurer a higher burden (and more significant consequences[92]) for refusing to defend.[93]  For this reason, the Court will assume a conflict exists between Montana and Delaware law, and go on to consider which state has the "most significant relationship" to the current litigation.

## 2. The Court considers the *Restatement (Second) of Conflict of Laws* in determining which state has the "most significant relationship" to the current litigation.

The starting point for this second prong in the choice-of-law analysis,  in cases where the parties have *not* included an effective choice of law provision in their insurance coverage contracts,[94] is an examination of the *Restatement (Second) of*

---

[90] *Id*. at 8 ("Stillwater seizes on an alternative phrasing of the Montana advancement standard, asserting that the duty arises when 'coverage is potentially implicated.'"  That language does not set up a lower standard than in Delaware.") *Id*.

[91] *See id*. at 10.

[92] Stillwater argues National Union's breach of the Primary Policy results in (i) estoppel from denying coverage and (ii) a forfeiture of any policy defense to coverage for Stillwater's defense costs in the Appraisal Action.  *See* Am. Compl. ¶ 77; *see also* Stillwater's Reply Br. in Supp. of its Mot. to Dismiss without Prej. at 10 (citing *Farmers Union Mut. Ins. Co. v. Staples*, 90 P.3d 381, 388 (Mt. 2004) for the proposition that where an insurer unjustifiably refuses to honor its duty to defend, the insurer "is estopped from denying coverage").

[93] *See, e.g.*, *Staples,* 90 P.3d at 386; *Insured Titles, Inc. v. McDonald*, 911 P.2d 209 (Mt. 1996).

[94] *RSUI Indem. Co. v. Murdock*, 248 A.3d 887, 896 (Mar. 3, Del. 2021) (citing *Liggett Grp., Inc. v. Affiliated FM Ins. Co*., 788 A.2d 134, 137 (Del. Super. Ct. 2001)).

*Conflict of Laws* §§ 188[95] and 193.[96] Under Section 193, the *Restatement* "provides

a presumption for insurance contracts" whereby courts apply the local law of the

state that the parties understood "was to be the principal location of the insured risk

during the term of the policy."[97] Section 193, however, was developed in connection

with "fire, surety, and casualty insurance contracts" and is of limited utility in cases,

like this one, in which the policy insures risks that are not confined to one particular

location.[98] In such cases, Delaware courts must consider "broader subject-matter-

specific factors."[99] In *Murdock*, the Delaware Supreme Court conducted a choice of

law analysis for a case where the parties did not choose what state's law would

---

[95] *Second Restatement*, § 188 LAW GOVERNING IN ABSENCE OF EFFECTIVE CHOICE BY THE PARTIES in its entirety reads: "(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6. (2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include: (a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties. These contacts are to be evaluated according to their relative importance with respect to the particular issue…"

[96] *Second Restatement*, § 193 CONTRACTS OF FIRE, SURETY OR CASUALTY INSURANCE reads: "The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied."

[97] *Murdock*, 248 A.3d at 896 (citing *Certain Underwriters at Lloyds, London v. Chemtura Corp.*, 160 A.3d 457, 465 (Del. 2017)).

[98] *Id.* (evidence of a comprehensive program insuring risks that was not confined to a single jurisdiction required looking at "broader subject-matter-specific factors" that bore on the significance of the different states' relationship to the contract). *Id.*

[99] *Id.*

govern their respective contractual duties.[100] The Insurer argued the lower court placed undue emphasis on incorporation status, creating "an unprecedented and inflexible rule" where "the insured's state of incorporation [will be considered] the dispositive factor in choice of law for D&O policies."[101] Murdock responded by arguing that an emphasis on the location of headquarters should not constrain the analysis either.[102]

The Delaware Supreme Court responded to both positions in holding that *Restatement* § 188 "addresses contract disputes more broadly" than a consideration of only the state of incorporation or principal place of business.[103] Those contacts in Section 188 include: (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the parties' domicile, residence, nationality, place of incorporation and place of business.[104] These contacts are weighed in light of the overarching choice-of-law considerations set forth in Section 6 of the *Restatement*:

(a) the needs of the interstate and international systems,
(b) the relevant policies of the forum,
(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
(d) the protection of justified expectations,
(e) the basic policies underlying the particular field of law
(f) certainty, predictability and uniformity of result, and

---

[100] *Id*. at 895.
[101] *Id*.
[102] *Id*.
[103] *Id*. at 896.
[104] *Second Restatement* §188 LAW GOVERNING IN ABSENCE OF EFFECTIVE CHOICE BY THE PARTIES.

(g) ease in the determination and application of the law to be applied.[105]

The Court in *Murdock* acknowledged that application of the various factors reasonably could support conflicting conclusions regarding which state's law a court should apply, but it is the court's job to balance those factors in a manner that best will accommodate conflict.[106]  The balancing of the *Restatement* factors does not need to be conducted uniformly for all insurance policies without regard to their subject matter or purpose.[107]  Rather, this Court will weigh the factors on a case-by-case basis, considering the specific factual allegations of the litigation before it. But in doing so, this Court cannot ignore precedent that indicates Delaware has a strong interest in disputes involving D&O insurance coverage.[108]  For example, the *Murdock* Court held that the factors from *Restatement* § 6 suggest the state of incorporation is the "center of gravity of the typical D&O policy."[109]

---

[105] *Murdock*, 248 A.3d at 897 (citing Section 6 of *Second Restatement*).

[106] *Id.*

[107] *Id.* at 899 ("Put another way, we ask whether [precedent] dictates that the balancing of the *Second Restatement* factors must be conducted uniformly for all insurance policies without regard to their subject matter and animating purpose.  Our answer is that it does not…")  *Id.*

[108] *Sycamore Partners Mgmt., L.P. v. Endurance Am. Ins. Co.*, 2021 WL 761639, at *8 (Del. Super. Ct. Feb. 26, 2021) (explaining "Delaware takes a superseding interest in the merits of disputes involving insurance coverage for fiduciary mismanagement of Delaware organizations."); And in discussing *Pfizer Inc. v. Arch Ins. Co.*, 2019 WL 3306043, at *7-8 (Del. Super. Ct. July 23, 2019), the *Sycamore* court explained "[t]his Court…held Delaware law governed a D&O policy issued to a Delaware-incorporated firm despite the fact that the firm was headquartered in New York, the policies were issued and brokered in New York, the policies were amended by New York endorsements, and the underlying claim to which coverage attached was filed in New York." *Id.* at *8.

[109] *Murdock*, 248 A.3d at 901.

A choice of law analysis is not mathematical, and the state with the "most significant relationship" to the parties may not necessarily be the state with the most contacts."[110] The addition of other contacts, therefore, in combination with Stillwater's principal place of business in Montana *still* may not be enough to tip the balance in favor of applying Montana law to the current case.[111] Absent strong contacts in Montana, Delaware is the "center of gravity" for the D&O Policies.[112]

### 3. Delaware has the "most significant relationship" after a consideration of *Restatement* Sections 188, 193, and 6.

As previously discussed, Delaware precedent holds that the state of incorporation is the "center of gravity" for D&O policies, and Stillwater is incorporated in Delaware.[113] The insurance policy at issue offers directors', officers', and corporate liability coverage for a Delaware corporation, and Delaware law likely would govern the standard used to determine whether such liability exists in a particular case. Accordingly, Delaware has a strong interest in the scope and applicability of the coverage, and Delaware law therefore governs the policy unless

---

[110] *KT4 Partners LLC,* 2021 WL 2823567, at *16.
[111] *Murdock*, 248 A.3d at 901 (explaining that other contacts simply were not "as legally significant or as laden with policy considerations as [the Insured's] status as a Delaware corporation and the individual insureds' status as directors and officers, all operating under the authority and guidance of Delaware law").
[112] *Id.*
[113] Plf.'s Am. Compl. ¶ 9.

the contacts with another forum are sufficient to tip the presumption away from Delaware.[114]

Here, Stillwater's principal place of business is Montana. But nothing else in the record weighs in favor of applying Montana law. Stillwater argues the location of its headquarters should be enough to convince this Court that Montana law should apply.[115] But a company's principal place of business generally will not outweigh its state of incorporation in determining coverage for a D&O policy.[116] Stillwater's various alleged contacts with Montana[117] neither distinguish the current litigation from existing Delaware precedent nor warrant a departure from applying the law of Stillwater's state of incorporation to the D&O policies.

Additionally, Stillwater argues in favor of applying Montana law because the Primary Policy contains "Montana Amendatory Endorsements," but those provisions are neither unusual nor sufficiently strong enough to tip the scale in favor of applying Montana law.[118] Again, other Delaware cases involved policies that

---

[114] *Murdock*, 248 A.3d at 901.

[115] Plf.'s Am. Compl. ¶¶ 9, 16-17. Plf.'s Opp. to Insurers' Mot. to Dismiss at 4.

[116] For example, the Insureds in *Murdock* were headquartered in California, but the Court applied Delaware law. *See Murdock*, 2021 WL 803867, at **6; Likewise, Pfizer Inc. was located in New York, but the Court applied Delaware law. *Pfizer Inc. v. Arch Ins. Co.*, 2019 WL 3306043, at *7 (Del. Super. Ct. July 23, 2019). Stillwater argues that the Primary Policy was issued to it at its non-Delaware headquarters, but this reflects similarities in *Murdock*, at *1 and *Pfizer*, at *7. Plf.'s Am. Compl. ¶ 39.

[117] Stillwater contends the D&O Policies were endorsed to state that they would conform to Montana law. Plf.'s Opp. to Insurers' Mot. to Dismiss at 4. Stillwater also alleges the Polices were issued to it as a "Montana citizen." *Id*. at 1.

[118] *See* Plf.'s Am. Compl. ¶ 54.

contained amendatory endorsements referencing non-Delaware states, but those courts still applied Delaware law.[119] The D&O Policies' references to the state of formation in the Montana endorsements or even in the ADR provision are not dispositive. Delaware courts have declined to give those provisions dispositive weight in a conflict of laws analysis.[120] A conformity clause alone is *not* a choice of law provision.[121] This is not to say a contract may never have a clause that operates as both a conformity clause and a choice of law provision. A single provision in a contract may constitute both a conformity clause and a choice-of-law clause, but that language must be plain and clear.[122] Stillwater could have ensured application of Montana law through (i) such a clause, (ii) a choice of law provision, or (iii) a "most favorable law" clause. That language, however, is absent from the Policy.

No disputed facts suggest stronger Montana contacts exist to warrant application of Montana law. The present case involves a Delaware appraisal action against Stillwater that arose out of a merger pursuant to Delaware law, litigated in the Delaware Court of Chancery. Stillwater's own previous statements that

---

[119] *See Murdock*, 248 A.3d at 898.

[120] *See Sycamore Partners Mgmt., L.P.*, 2021 WL 4130631 (Del. Super. Ct. Sept. 10, 2021); *Murdock*, 248 A.3d at 898; *Pfizer Inc. v. Arch Insurance Co.*, 2019 WL 3306043, at *7 (Del. Super. Ct. July 23, 2019).

[121] *See, e.g.*, *AEI Life LLC v. Lincoln Benefit Life Co.*, 892 F.3d 126 (2nd Cir. 2018) (holding a policy contained a conformity clause, rather than a choice-of-law clause).

[122] *See id*. at 135 (2nd Cir. 2018) ("We do not foreclose the possibility that a single policy provision might constitute both a conformity clause and a choice-of-law clause. We conclude only that the provision in the policy at issue here, as written is not both.")

25

Delaware law applied to the D&O Policies and Stillwater's coverage claims underscore this conclusion.[123] Stillwater did not raise its Montana claim at the outset, even though it concedes it could have done so. Nothing in the record supports deviating from the general rule, settled by *Murdock*, that the state of incorporation generally will the provide governing law for a D&O policy.

Finally, through the course of briefing and argument, Stillwater advanced the alternative theory that even if Delaware law applies to the D&O Policies' interpretation, Montana law should apply to the claims handling.[124] Stillwater argues Montana's defense standard requires the insured to show that coverage potentially is implicated, while the insurer must unequivocally demonstrate a lack of coverage at the time of tender.[125] This standard, Stillwater contends, should apply to the Insurers' denial of coverage for the Appraisal Action.[126]

The use of multiple states' laws, known as depecage, is disfavored generally, including in Delaware.[127] The application of different states' laws to different

---

[123] Specifically, in Stillwater's initial complaint and in its motion for judgment on the pleadings, Stillwater alleged that "Delaware law applies" and that "Delaware has a strong state interest in the application of its principles of corporate law and governance in constructing the directors' and officers' liability insurance policies at issue in this matter." Plf.'s Initial Compl. ¶ 19 at 22, n. 54.

[124] Plf.'s Opp. To Insurers' Mot. to Dismiss Am. Compl. at 20, n.11. ("Stillwater contends that Delaware and Montana law should apply to separate claims: Delaware law applies to the policy interpretation, but the Insurers' defense conduct should be governed by Montana law.") *Id*.

[125] This is a departure from Stillwater's original position that Montana law should govern the policies' interpretation. Plf.'s Am. Compl. ¶ 71.

[126] Plf.'s Opp. To Insurers' Mot. to Dismiss Am. Compl. at 20, n. 11.

[127] *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045 (Del. 2015); *Jackson v. Bridgestone Ams. Tire Operations, LLC*, 2015 WL 13697682 (Del. Super. Ct. Nov. 24, 2015).

aspects of a contractual relationship reduces both certainty and efficiency for insureds and insurers alike and contravenes the pronouncement in *Murdock* that emphasized the importance of having a "single body of law" to govern insurance programs applicable to "operations around the world."[128] And the Delaware Supreme Court has acknowledge that depecage "generally makes no logical sense."[129] Other than an apparent belief that applying Montana law in this case would rescue its coverage claims from inevitable dismissal under *Solera II*, Stillwater has not articulated any compelling basis to apply this "sparingly used" doctrine. This results-based reasoning is the precise result the Restatement seeks to avoid.

**B. Under Delaware law, Stillwater has failed to state a claim upon which relief can be granted, and its complaint therefore must be dismissed.**

Delaware law applies to the Policies because Delaware has the "most significant relationship" with the parties. The Court therefore must grant the Insurers' motions to dismiss Stillwater's Amended Complaint with prejudice for failure to state a claim upon which relief can be granted. The Policy's plain terms afforded Stillwater coverage only for a Securities Claim, a Claim "alleging violation" of a law. Under *Solera II*, an appraisal action is not a claim "for a violation

---

[128] *Murdock*, 248 A.3d at 899.
[129] *Bell Helicopter Textron, Inc.,* 113 A.3d at 1052 n.28 (Del. 2015) ("...[W]e note that it generally makes no logical sense to apply different laws to these elements in the same case.")

27

of law," and therefore not a Securities Claim under the D&O Policies.[130] Stillwater has the burden of proving that its insuring agreements afford it coverage for the alleged loss at issue, which includes proving that the Delaware Appraisal Action was a Securities Claim. Stillwater has not met that burden, and this Court therefore must dismiss its amended complaint with prejudice.

## CONCLUSION

For the foregoing reasons, the Insurers' motions to dismiss are **GRANTED. IT IS SO ORDERED.**

---

[130] *Solera II*, 240 A.3d at 1131.